**CITY OF NEW YORK v. UNITED STATES.**

No. 49413.

United States Court of Claims.

July 13, 1953.

Nathan Brilliant, Brooklyn, N. Y., for plaintiff. Denis M. Hurley, Harry E. O'Donnell and Reuben Levy, New York City, were on the brief.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen., William Amory Underhill, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

On or about July 28, 1942, the defendant leased from the plaintiff 335,747 square feet of cold storage space on four floors in the Bronx Municipal Terminal Market in the City of New York, under a lease which provided that 252,123 square feet on three floors were to be used for "cooler" storage, with temperatures ranging from 20 to 40 degrees Fahrenheit and that 83,624 square feet on one of the floors were to be for "freezer" storage, with temperatures ranging from zero to 20 degrees Fahrenheit. The defendant took possession of the leased premises on August 15, 1942, and "cooler" space was duly furnished on the third, fourth and fifth floors and "freezer" space was provided on the sixth floor.

The rental fixed in the lease was at the rate of $270,000 per annum and was computed at the rate of $1.50 a square foot for "freezer" space, and $1.00 a square foot for "cooler" space, both less 28 percent allowance for aisle space. This difference in rent of 50 cents per square foot was admitted to be fair and reasonable. Although exact computation of the aggregate rental at such rates provided for a total annual rent of $271,843.48, the parties adopted the figure of $270,000.

Defendant thereafter required additional "freezer" storage space, and requested the plaintiff to furnish the same for the 83,772 square feet on the fifth floor of the leased premises, in place of the "cooler" space then being furnished on that floor, as provided in the lease. Such additional "freezer" space was duly furnished by the plaintiff for the periods from January 1, 1944, to April 30, 1944, and from December 19,

1945, to January 31, 1946—a total of five months and thirteen days.

The rental difference between "cooler" and "freezer" space for the area so occupied amounted to $13,619.71 for the periods above specified. Upon the refusal of the Government to pay this additional amount, plaintiff instituted this suit for that amount plus interest.

The lease, which had been prepared by the defendant contained the following provisions:

"2. The City hereby leases to the Lessee, for general and cold storage warehousing of nonhazardous commodities, that portion of the Bronx Municipal Terminal Market situated at Exterior Street and East 151st Street, Borough of The Bronx, described as follows:

"(a) The entire third, fourth, fifth, and sixth floors, which include approximately 335,747 square feet of "cooler and freezer" storage space as hereinafter specified; * * *

"3. The City hereby agrees:

"(a) That approximately 252,123 square feet on three of the floors specified in subparagraph (a) of paragraph 2 hereof, shall be maintained as "cooler" storage space at temperatures ranging from twenty to forty degrees Fahrenheit.

"(b) That approximately 83,624 square feet on one of the floors specified in subparagraph (a) of paragraph 2 hereof, shall be maintained as "freezer" storage space at temperatures ranging from zero to twenty degrees Fahrenheit.

* * * * * *

"5. The City shall, during the term of this lease and any renewal thereof, as a part of the rental consideration:

"(a) Operate and maintain the power plant to provide such 'cooler and freezer' temperatures in all refrigerated rooms as may be from time to time specified by the Lessee and will upon request by the Lessee, furnish as low temperature as the piping and equip-

ment as now installed in any room will presently produce; * * *"

Defendant contends that section 2(a) of the lease obligated plaintiff to furnish approximately 335,747 square feet of "cooler and freezer" storage space as "hereinafter specified," and that paragraphs 3(a), 3(b), and 5(a) particularized the obligation of 2(a). Under these provisions, especially 5(a), the defendant urges that it was within its rights in demanding "freezer" space on "cooler" floors since the plaintiff lessor was obligated to furnish as low temperature as the "piping and equipment as now installed in any room will presently produce." Since no change of equipment was required to produce the lower temperatures on the fifth floor, defendant states that the plaintiff in furnishing the added "freezer" space was doing nothing more than was required under the lease.

Plaintiff says that under the terms of the lease it was not required upon defendant's demand to furnish the more costly "freezer" space on what had originally been designated as "cooler" floors without additional rent. Plaintiff states that this conclusion is particularly apt when it is remembered that the rental value of "freezer" space was concededly higher, and, the rental reserved in the lease agreement was predicated upon the difference in value of the respective spaces.

Defendant urges that paragraph 5(a) of the lease is couched in plain language and hence requires no judicial construction. This is true, but when placed alongside the other provisions of the lease it creates an ambiguity of sufficient proportion to require construction by the court. When each provision of the lease here pertinent is looked to apart from the whole, one gathers that under 3(a) and 3(b) "cooler" space is to be provided on three floors and "freezer" space on only one floor. Paragraph 5(a) by itself leads one to the conclusion, as the defendant urges, that the plaintiff could be required to provide "freezer" space on all floors or any number thereof.

However, the interpretation which defendant places upon paragraph 5(a) would render the whole instrument meaningless

since at any time upon request plaintiff could have been required to furnish "freezer" space instead of "cooler" space in all the refrigerated rooms embraced within the lease. For example, defendant might have discovered after entering into the lease that it had no need at all for "cooler" space and requested plaintiff to furnish "freezer" space upon the whole of the third, fourth and fifth floors of the leased premises. In the event that the equipment installed in the rooms on those floors was capable of producing such lower temperatures, could the defendant then maintain that it was entitled to receive this more expensive service under the provisions of paragraph 5(a) of the lease? We think not.

■ To resolve this apparent ambiguity we look to the intention of the parties which is to be gathered not from a reading of paragraph 5(a) alone, but from the whole instrument in the light of the circumstances existing at the time of its negotiation. Loftis v. United States, 76 F.Supp. 816, 110 Ct.Cl. 551, 628 and cases there cited.

■ When the defendant requested the additional 83,772 square feet of "freezer" space on the fifth floor of the leased premises in place of "cooler" space then being furnished, plaintiff expected to be paid the increased differential accordingly. Defendant now says the plaintiff did not protest against furnishing this freezer space without the additional rent differential at the time defendant first made its request. Plaintiff proceeded to furnish the service without question and included the increased rentals in its monthly bills. Under the lease and the circumstances we think plaintiff proceeded as any reasonable person would have done. The service was requested, duly furnished and plaintiff had a right to believe it would be paid on the basis of the higher rates applicable to "freezer" space.

By the terms of the lease as well as the admission of the parties it was recognized that there was a fair and reasonable differential in rent of 50 cents per square foot of "freezer" space over "cooler" space. A letter from an official of the plaintiff to the Government (Finding 4) clearly discloses that the rental was computed upon the basis of the difference in charges between "freezer" and "cooler" space. Upon this feature of the lease, there was a complete meeting of the minds of the parties. Thus, it is quite apparent that the defendant intended at the time of the execution of the lease to pay for the "freezer" space at the greater rate. In the face of this clear intention, we believe that the ambiguity created by section 5(a) must be resolved in favor of the plaintiff. So applied, it leads to the conclusion that the low temperature which was to be required under 5(a) was to be the lowest temperature possible with the then installed equipment within the 20 to 40 degree range on the three designated "cooler" storage floors and within the zero to 20 degree range on the one designated "freezer" storage floor. In view of the clear intention that a price differential was to exist, it would be unreasonable to apply 5(a) in such a way as to make utterly meaningless this designation of "cooler" and "freezer" storage floors.

■ Plaintiff is entitled to recover and judgment will be entered in the plaintiff's favor in the sum of $13,619.71. No interest on this amount is allowable. United States v. N. Y. Rayon Importing Co., 329 U.S. 654, 658, 67 S.Ct. 601, 91 L.Ed. 577; 28 U.S.C. (Supp. III) § 2516.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.