**UNITED STATES of America, Appellee,**

v.

**Andre MIELES, Appellant.**

**No. 949, Docket 73–1263.**

United States Court of Appeals, Second Circuit.

Argued June 1, 1973.

Decided June 22, 1973.

Michael A. Young, New York City (Robert Kasanof, and Federal Defender Services Unit/The Legal Aid Society, New York City, of counsel), for appellant.

David A. DePetris, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., and Raymond J. Dearie, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

PER CURIAM:

In this typical narcotics prosecution in the District Court for the Eastern District of New York, Andre Mieles was convicted, after trial before Judge Bartels and a jury, of illegal possession and distribution of 28.6 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). The Government's proof, presented through Patrolman William McGroarty, who had purchased the cocaine while acting in an undercover capacity, and corroborated in substantial part by a surveilling agent, William McGinn, was this: McGroarty drove with a codefendant, Nicholas Rodriguez, in McGroarty's car to a rendezvous with appellant's cousin, Jose Mieles, also a codefendant.[1] Rodri-

---

1. Both Rodriguez and Jose Mieles pleaded guilty.

guez got out of the car and began talking with Jose. Appellant Andre Mieles soon arrived in a 1966 red Oldsmobile and joined the conversation. After about five minutes, during which McGroarty had a clear view of Andre Mieles some 30 feet away, Andre and Jose drove off in the red Oldsmobile. Forty-five minutes later they returned. Andre got out of his car and walked directly toward McGroarty's car, where the Patrolman was sitting, and placed on the floor a package of aluminum foil later found to contain cocaine. McGroarty asked "How much?" and, after Andre replied $800 handed this to him in cash. Andre then walked back to Jose, and they were joined by Rodriguez. Andre handed the money to Jose. Jose gave a part of it to Rodriguez, who rejoined McGroarty, and the two then drove away. When McGinn and other agents went to Andre's home to effect his arrest some six weeks later, Andre attempted to flee.

Andre denied any involvement in the transaction, although he admitted his wife's ownership of the red Oldsmobile, his acquaintance with Rodriguez and his attempt to flee. He offered no alibi.

■ The first point raised on appeal relates to McGroarty's courtroom identification of the defendant. On the evening of the cocaine transaction, another officer advised McGroarty of a possible identification and asked McGroarty to look through five or six photographs. McGroarty picked a photo of Andre Mieles, which was produced at a pretrial suppression hearing but was not offered at the trial. When at the suppression hearing, defense counsel asked for the other photographs, the Government was unable to furnish them since they had been returned to files or other officers. While we condemn such carelessness in the handling of material potentially useful to a defendant, the episode does not call for reversal. The utmost benefit to which appellant would be entitled would be an assumption that the other photographs were of individuals so different in appearance as to render the identification impermissibly suggestive, compare United States v. Fernandez (I), 456 F.2d 638, 641 (2 Cir. 1972). Even on that assumption, the judge would have been amply justified in finding that this did not taint the in-court identification by McGroarty, a trained observer who had viewed Andre at close range for some ten to twelve minutes during clear daylight. Compare United States ex rel. Gonzalez v. Zelker, 477 F. 2d 797, (2 Cir. 1973). Although it would have been preferable if the judge had made a specific finding to this effect, this is fairly to be implied from his denial of the motion to preclude the anticipated in-court identification.[2] Compare United States v. Abbate, 451 F.2d 990 (2 Cir. 1971). It is worth noting, also,

2. The following colloquy during the suppression hearing makes it clear that this is what the judge had in mind in denying the motion:

> The Court: Even that [demonstrating that the photographic display was impermissibly suggestive] wouldn't be at all conclusive. It depends on all the circumstances of this case, . . .
> He has stated here that he had seen this man for between ten and—
> The Witness: And 12, 15 minutes.
> The Court: Ten or twelve or fifteen minutes, talked to him—did you?
> The Witness: That's correct, your Honor.
> The Court: And you were next to him—how near were you to him?
> The Witness: I was seated in a vehicle and he was standing on the side of the vehicle by the window.
> The Court: Would you say you were a foot away from him?
> The Witness: About a foot, yes, your Honor.
> The Court: Not any more than a foot?
> The Witness: Not more.
> The Court: You saw his face clearly, you looked straight in his eyes, he looked in your eyes?
> The Witness: That's correct.
> The Court: Immediately thereafter, the second meeting, you went up and looked at some photos, is that right?
> The Witness: That's right.
> The Court: I will deny the motion.

that McGroarty's identification of Mieles at trial was corroborated by Agent McGinn, who had not been shown the presumably suggestive photo display.

Appellant's other points are that the judge unduly assisted the prosecution through his questioning of witnesses and improperly interfered with defense counsel's summation. We find no merit in either. The only significant questioning by Judge Bartels followed a lengthy description by McGroarty of what transpired at the scene of the narcotics transaction after the return of the Mieles cousins, when the judge disassembled this so that he and the jury could get a clearer picture of just what happened. This is far removed from such repeated efforts by a judge to supply inadequacies of the prosecution as might lead the jury to believe he was part of the prosecution team, which we criticized in United States v. Fernandez (II), 480 F.2d 726, 737 (2 Cir. 1973). The judge's major interruption of the defense summation not only was not improper but was demanded. In an effort to minimize the inference from Andre's attempted flight, defense counsel sought to argue that Jose, who had been arrested two days before "could have told" Andre, who would thus have fled earlier if he had been conscious of guilt. Not only was there no evidence of any such communication, but Andre had testified that he did not spend much time with Jose and did not even know where Jose lived. A second interruption was when defense counsel sought to make something of the absence of fingerprint testimony, although the undisputed evidence was that, because of technical difficulties, it was not the practice to attempt to lift prints from aluminum foil. While the judge might better have omitted two other interruptions and trusted the jury to disregard exaggerated rhetoric, his remarks were technically correct and the episodes utterly inconsequential.

The judgment is affirmed. The mandate shall issue forthwith.