**B. D. CLICK COMPANY, INC.**

v.

**The UNITED STATES.**

No. 247–78.

United States Court of Claims.

Jan. 23, 1980.

Jimmy L. Browning, Breckenridge, Tex., attorney of record for plaintiff.

Emory J. Bailey, Wheaton, Md., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before SKELTON, Senior Judge, and KASHIWA and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

SKELTON, Senior Judge:

This is an appeal by the plaintiff, B. D. Click Co., Inc., under the Wunderlich Act (41 U.S.C. §§ 321–322 (1970)) from an adverse decision of the Armed Services Board of Contract Appeals (the Board) in ASBCA No. 18647. The plaintiff asserts that the decision of the Board was arbitrary, capricious, and not supported by substantial evidence and, consequently the decision should be reversed and judgment entered in its favor. The plaintiff, alleging a changed condition, seeks an equitable adjustment in the amount of $3,000 for installing a fire sprinkler system in a building constructed by it pursuant to a contract with the Department of the Air Force.

The facts show that on December 9, 1970, plaintiff was awarded Contract No. F41641–71–C–0116 in the lump sum amount of $24,960.00, for the construction of a stor-

age paint and dope building at Laredo Air Force Base, Texas. Incorporated by reference in the contract as general provisions were the Changes, Differing Site Conditions, Specifications and Drawings, and Disputes clauses usually found in military construction contracts. Another general provision was entitled "CONTRACT DRAWINGS, MAPS AND SPECIFICATION (1965 Jan/ASPR 7–602.45). The contract provided, among other things, the following:

## "SECTION I

### SCOPE OF WORK

SW–01 DESCRIPTION OF WORK:

a. The work consists of furnishing all plant, labor, and materials in strict accordance with these specifications, the schedule and drawings performing parts thereof for the construction of a Paint and Dope Storage Building, complete in accordance with Laredo Air Force Base Drawing Nr. 33–17–03.

b. The site of the work is at Laredo Air Force Base, Laredo, Texas. SW–02 PRINCIPAL FEATURES: *The work to be performed includes the following principal features:*

a. Construct Concrete driveway, building floor slab and foundation complete with drainage structure and necessary earth work.

b. Furnish and erect one 60 ft × 32 ft prefabricated, rigid frame type, metal building complete with louvers, roof ventilators, sky light panels, and miscellaneous accessories indicated in project specifications and drawings.

c. *Furnish and install a complete new fire protection sprinkler system complete with new 6 inch water main connection to water system.* The above general outline of work does not in any way limit the responsibility of the contractor from performing necessary operations or furnishing required appurtenances needed to provide for a complete and operational job as required by drawings and specifications.

\* \* \* \* \* \*

Contract Drawings, Map and Specifications (1965 Jan/ASPR 7.602.45).

\* \* \* \* . \* \*

(b) *Omissions from the drawings or specifications or the misdescription of details of work which are manifestly necessary to carry out the intent of the drawings and specifications,* or which are customarily performed *shall not relieve the Contractor from performing such omitted* or misdescribed *details* of the work *but they shall be performed as if fully and correctly set forth and described in the drawings and specifications.*

\* \* \* \* \* \*

SPECIFICATIONS AND DRAWINGS

The Contractor shall keep on the work a copy of the drawings and specifications and shall at all times give the Contracting Officer access thereto. Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. *In case of difference between drawings and specifications, the specifications shall govern.*" (Emphasis supplied).

The title page of the Technical Provisions of the contract provided:

"LAREDO AIR FORCE BASE
LAREDO, TEXAS
LDO 44–9

CONSTRUCT STORAGE PAINT &
DOPE BUILDING
OCTOBER 1970

SECTION I:     SCOPE OF WORK
SECTION II:    SPECIAL CONDITIONS
SECTION III:   *TECHNICAL PROVISIONS*

1. Earthwork

2. Concrete Construction

3. Prefabricated Metal Building

4. Structure Steel

5. Sheet Metalwork

6. Excavation, Trenching, and Backfilling for Utility Systems

7. *Sprinkler System*

8. Electrical

9. Pavements" (Emphasis supplied).

Another technical provision entitled "SPRINKLER SYSTEMS, FIRE PROTECTION" contained eleven pages of various requirements. In paragraph 7–02 the following appears:

"GENERAL: The contract drawings indicate the extent and general arrangement of the sprinkler system. The sprinkler system shall be the wet pipe-type system."

The contract also included one drawing, Drawing No. 33–17–03. Detail of the drawing shows the outside connections of the sprinkler system.

The eleven pages of the requirements of the sprinkler system set forth in the specifications of the contract described in minute detail the components of the sprinkler system including, among others, the following: gauges, caulking, flanges, steel pipe, cast-iron pipe, wrought iron pipe, pipe fittings, plumbing fixtures, gasket material, nuts and bolts, pressure fittings, standpipe and hose systems, water spray system, rubber gasket joints, square and hex bolts and screws, spare sprinklers, pipehangers, valves, shop drawings, welding, installation of material and equipment, workmanship, pipe installation, joints, bracing and clamping, control valves, excavation, trenching and backfilling, flushing, working pressure, special couplings, reducers, pipe supports and hangers, pipe sleeves, escutcheons, drains, protection against freezing, types of sprinklers, waterflow indicators, alarm check valves, sterilization, alarm facilities, repairs, tests, instructions for test, inspection, operation and preventive maintenance, and a one-year guarantee by the contractor.

A dispute arose between the plaintiff and the contracting officer in March, 1971, as to whether the plaintiff was required to install a complete fire protection sprinkler system in the building. The contracting officer contended that the contract required the plaintiff to install the system. The plaintiff argued that paragraph 7–02 of the Technical Provisions stated that: "the contract drawings indicate the extent and general arrangement of the sprinkler system," but that those drawings did not show a requirement for any plumbing of the sprinkler system other than that shown on Detail A of Drawing No. 33–17–03, which showed only outside connections and alarms for the system. Such drawing did not show a requirement for overhead piping, heat-sensitive sprinkler valves, or any other part of the sprinkler system. The contracting officer required the plaintiff to install the complete sprinkler system. The plaintiff says this was a change order for which it was entitled to be paid the cost of the system in the sum of $3,000 over and above the contract price.

The plaintiff installed the system and accepted the final payment for the full contract price on June 3, 1971, and signed a release without taking any exception, or otherwise reserving any claim arising out of the performance of the contract. Later, the plaintiff filed a claim with the contracting officer for $3,000 for installing the sprinkler system, which claim was rejected by the contracting officer as untimely since plaintiff had not asserted a claim prior to accepting final payment. The plaintiff says that it accepted the final payment and signed the release under duress in that the contracting officer and another official of the Government threatened that otherwise the company's record with the Government would be ruined and it would not be awarded any future government contracts.

The plaintiff filed an appeal on July 31, 1973, with the Board seeking an equitable adjustment. The Board denied the appeal. In the present suit the plaintiff seeks review of the Board's decision pursuant to the provisions of the Wunderlich Act, alleging that the Board's decision was arbitrary, capricious, unsupported by substantial evidence and so grossly erroneous as to imply bad faith. The case is before us on cross-motions for summary judgment.

Our review is limited to whether the Board's findings are fraudulent, arbitrary, capricious, so erroneous as to imply bad faith, or not supported by substantial evidence. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *United States*

*v. Anthony Grace & Sons, Inc.,* 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); *Marley v. United States,* 423 F.2d 324, 191 Ct.Cl. 205 (1970). The plaintiff has the burden of making such a showing, otherwise the Board's findings must be deemed to be final pursuant to the Wunderlich standards of review. In our opinion, the plaintiff has wholly failed to sustain this burden.

■■■ The Board found that the invitation for bids and the ensuing contract were not so complicated as to require "sophisticated construction." The Board found further that:

"Aside from the boilerplate, the contract provisions—entail three specified sections with the last section, 'TECHNICAL PROVISIONS,' subdividing the job into nine different areas of effort. *A sprinkler system was highlighted as a major effort as far as the construction of the building was concerned.* This requirement was not too surprising a concern when consideration is given to the intended purpose of the structure sought. The completed building was to serve as a storage area for paint, a combustible material.

In attempting to resolve the interpretation conflict posed by the litigants, the Board must scrutinize the contract in the manner consistent with the approach of a reasonable, intelligent bidder contemplating all the provisions of the contract and interpreting the instrument in a harmonious approach. With this as our guide, *we determine that any reasonable, intelligent bidder would have concluded that the sprinkler system for the interior of the building was to be furnished under the contract in question. Tokai International Kensetsu Company, Ltd.,* ASBCA No. 11447, 67–2 BCA ¶ 6660." (Emphasis supplied).

We agree. The interpretation of a contract is a question of law to be decided by the court, which is not bound by the Board's interpretation. We held in *Maxwell Dynamometer Co. v. United States,* 386 F.2d 855, 181 Ct.Cl. 607 (1967):

"The Board's conclusions, determinations, and decisions turned on its interpretation of the contract specifications. Since the basic and ultimate issue involves interpretation of the contract specifications which is a question of law, the Board's decision with respect thereto is not entitled to finality under the Wunderlich Act, *supra,* and we are not bound by the Board's determination. Therefore, the court is free to re-examine the question and reach its own conclusion as to what the contract required. See, *e. g., Blount Bros. Constr. Co. v. United States,* 346 F.2d 962, 964, 171 Ct.Cl. 478 (1965); *C. J. Langenfelder & Son v. United States,* 341 F.2d 600, 609, 169 Ct.Cl. 465, 480 (1965); *Hol-Gar Mfg. Corp. v. United States,* 351 F.2d 972, 974, 169 Ct.Cl. 384, 386 (1965); *Wingate Constr. Co. v. United States,* 164 Ct.Cl. 131, 138 (1964)." 386 F.2d at 867, 181 Ct.Cl. at 626.

*See* also *Dana Corp. v. United States,* 470 F.2d 1032, 1041, 200 Ct.Cl. 200, 214 (1972), and 41 U.S.C. § 322. However, we have held that if the interpretation of a contract by an agency or board on a question of law is considered to be correct by the court, the court may approve or adopt the decision of the agency or the board on the question. That was our holding in a Wunderlich review of a decision of the Atomic Energy Commission in the case of *Beryllium Corporation v. United States,* 449 F.2d 362, 196 Ct.Cl. 12 (1971) where we said:

"However, if the decision of the agency on a question of law is deemed by the court to be correct, the court may, and frequently does, adopt the decision of the agency on such question." 449 F.2d at 366, 196 Ct.Cl. at 19.

While not expressed in these exact words, such was the effect of our holding in *Northwestern Industrial Piping v. United States,* 467 F.2d 1308, 199 Ct.Cl. 540 (1972), where we stated:

"We believe . . . that the Board's interpretation was, therefore, correct, whether entitled to finality or not." 467 F.2d at 1311, *Id.* at 545.

In any event, the final decision on the interpretation of a contract, being a question of law, is for the court, and we follow that principle in this case even though, as stated below, we conclude that the Board correctly interpreted the contract.

The contract here required in plain understandable English that the contractor:

"Furnish and install a complete new fire protection sprinkler system complete with new 6 inch water main connection to water system."

The section of the contract dealing with Technical Provisions enumerates the 9 principal items of work, material and labor to be furnished by the contractor and item No. 7 on this list is "Sprinkler System." Another technical provision stated:

"The sprinkler system shall be the wet pipe-type system."

Then follows eleven typewritten pages of specifications in which the components of the sprinkler system are described in minute detail, even down to the "nuts and bolts."

The plaintiff bases its construction of the contract on the statement appearing under the heading of "General" which says:

"The contract drawings indicate the extent and general arrangement of the sprinkler system."

There was only one drawing (No. 33–17–03) in the contract, and it only shows the outside connections of the sprinkler system. Therefore, the plaintiff concluded that it was only required to install the outside connections of the system.

■ General Provision No. 18 of the contract (ASPR provision 7–602.2) clearly states in pertinent part:

"Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both."

Consequently, any omission or deficiency in the drawings relating to the sprinkler system was supplied by the specifications.

General Provision No. 18 also provided:

"In case of difference between Drawings and Specifications, the Specifications shall govern."

The Specifications clearly called for the installation of a complete sprinkler system, and they are controlling here.

■ In determining whether the sprinkler system was required, the contract must be read as a whole. *See Hol-Gar Manufacturing Corp. v. United States,* 351 F.2d 972, 169 Ct.Cl. 384 (1965); *City of New York v. United States,* 113 F.Supp. 645, 125 Ct.Cl. 576 (1953). Also, the contract should be interpreted in a manner which gives meaning to all its parts and in such a fashion that the provisions do not conflict with each other, if this is reasonably possible. *Hol-Gar Manufacturing Corp. v. United States, supra; Bethlehem Steel Co. v. United States,* 75 Ct.Cl. 845 (1932).

■ The plaintiff does not allege that the contract was ambiguous, nor that there was any discrepancy, omission or conflict in its provisions that were not obvious to a reasonable man. Without alleging and proving the existence of these facts under the circumstances of this case, the plaintiff's interpretation of the contract could not be reasonable. *See Jamsar, Inc. v. United States,* 442 F.2d 930, 194 Ct.Cl. 819 (1971); *Southern Constr. Co. v. United States,* 364 F.2d 439, 176 Ct.Cl. 1339 (1966); and *Randolph Engineering Co. v. United States,* 367 F.2d 425, 176 Ct.Cl. 872 (1966). If there were omissions or inconsistencies in the contract's provisions that were obvious, the plaintiff was required to make inquiry regarding them before submitting its bid. We held in *Jamsar, Inc. v. United States, supra:*

"In failing to respond to this obligation and going ahead with its bid preparation, plaintiff voluntarily assumed all risks of an incorrect interpretation." 442 F.2d at 935, 194 Ct.Cl. at 827.

The Board recognized this principle in the instant case when it correctly held:

"Appellant's construction of the contract created an obvious omission, in which case appellant was required to

make inquiry prior to bidding if it wished to preserve its espoused interpretation. *Mecon Co.,* ASBCA No. 17609, 74–1 BCA ¶ 10,496. Not having made inquiry, appellant was obliged to perform as directed without recourse to an increase in contract price."

If plaintiff's interpretation were adopted, certain provisions of the contract would be meaningless. For instance, the 11 pages of the specifications describing the components of the sprinkler system would have no meaning whatsoever. The same would be true of the provisions that specifically require the contractor to install the system. Such glaring inconsistencies under plaintiff's interpretation required it to make inquiry regarding them prior to bidding. The facts show it made no such inquiry before submitting its bid.

■ Accordingly, we hold that the contract was not ambiguous; that the interpretation of the agreement by the plaintiff was not reasonable; that the Board correctly interpreted the contract as an agreement that required the contractor to install the sprinkler system; and that no change order was ever issued by the contracting officer. The decision of the Board was neither arbitrary nor capricious, was supported by substantial evidence, and correct as a matter of law, and it is hereby affirmed.

■ The plaintiff is not entitled to recover in this case for the further reason that it accepted final payment and signed a release without exception or reservation. While the release is not in the record, the overwhelming evidence shows without question that the plaintiff did in fact sign a release of his claims. The record shows that plaintiff admitted in four different written documents filed with the Board that it had signed a release. In one of these documents, it asked the Board to declare the release null and void. Also, plaintiff admits in his motion for summary judgment that it signed a release. The defendant alleges in its First Amended Answer to Plaintiff's

First Amended Petition as a second affirmative defense and again as a third affirmative defense that the plaintiff executed a release without reserving any rights or claims. The plaintiff never denied these allegations. The contents of these admissions and pleadings are shown in pertinent part in chronological order as follows:

(1) In plaintiff's written request dated November 7, 1972, for a final decision by the contracting officer, the following statement appears:

"The contractor [plaintiff] (to the best of our knowledge) did sign a Release of Claims and submitted a letter stating the additional work would be installed without cost to the Government, but as you know these were submitted by the contractor under coercion from the Government."

(2) In a certified letter dated December 11, 1972, written by plaintiff to the contracting officer, the plaintiff stated:

"The release of claims or failure to note a claim was due to the duress being placed on the contractor by the Government."

(3) The plaintiff stated in its written appeal to the Board dated July 31, 1973:

"That the contractor did sign a Release of Claims on this project, but due to the coercion by the Government, we ask that this Release be declared null and void."

(4) In a sworn affidavit of B. D. Click, president of the plaintiff company, dated May 10, 1974, and filed with the Board, the following admission appears:

"I further wrote a letter dated 28 March 1971 and signed the Release of Claims under fear of what action the Government would take to destroy my business." [1]

(5) The plaintiff again admitted in its Motion For Summary Judgment in this court that it signed a release by stating:

1. The foregoing four admissions that plaintiff executed a release were signed by B. D. Click in his capacity as president of the plaintiff company and filed by him with the Board. The plaintiff was not represented by counsel at that time.

"Plaintiff, at this point, would point out to the Court, that Plaintiff's Petition also seeks compensation for this additional work by the alternative claim that the Government breached a verbal contract to pay or compensate Plaintiff for the additional work in question in exchange for his doing the work and signing a release at the conclusion of the construction job in question."

(6) The defendant raised the release issue affirmatively in its First Amended Answer as follows:

*"Second Affirmative Defense*

\* \* \* \* \* \*

Final payment under the contract in question was made on June 3, 1971. Plaintiff accepted payment and executed a release without reserving to itself any claims under the contract.

*Third Affirmative Defense*

12. Defendant's third affirmative defense is release. Plaintiff accepted final payment under the contract on June 3, 1971, and at that time plaintiff executed a 'release' without reserving to itself any claims under the contract."

The Board did not make an express finding that the plaintiff signed a release. The only references to a release in its opinion are the following:

"—While acknowledging that it signed a release and received final payment under the captioned contract, appellant alleges such action was the product of duress (Sworn Statement B. D. Click, 31 July 1973)."

\* \* \* \* \* \*

"Final payment under the captioned contract was made on 3 June 1971 (R4, Tab c). The release signed by the appellant is not before the Board, but it is noted that the payments clause in the contract authorizes the contracting officer, in making final payment, to secure a release of all claims against the Government. Apparently a release was required and executed by the appellant without preserving the claim in question."

It would appear that these findings are tantamount to a finding of fact by the Board that the plaintiff executed a release of his claim. But even if this is not so, it is of no consequence, because under the undisputed facts as shown by the record, we can make such a finding. It has long been the rule that where a board fails to make a finding of fact on evidence that is undisputed, the court can make the finding. Such a finding may also be made by the court even if the evidence is disputed but is of such a nature that as a matter of law the board could only make one finding of fact or decide the fact in only one way. See our opinion in *Maxwell Dynamometer Co. v. United States, supra,* where we held:

"Where an administrative board has failed to make a relevant finding of fact as to which the evidence is undisputed, this court has made such finding rather than referring the matter to the board. *Kraus v. United States, supra* [366 F.2d 975, 177 Ct.Cl. 108 (1966)] (see note 4). Likewise, where the evidence is disputed but is of such a nature that as a matter of law the Board could have made only one finding of fact, it would seem that this court can make that finding without sending the matter back to the Board for determination of the factual issues; [17]

[17] This is the practice that has long been adopted in the federal courts with respect to administrative agencies. *Confederated Tribes of the Warm Springs Reservation v. United States, supra* [177 Ct.Cl. 184 (1966)]; *Spokane Tribe of Indians v. United States, supra* [163 Ct.Cl. 58 (1963)] and cases cited therein. (See note 4.)" 386 F.2d at 870, 181 Ct.Cl. at 631.

otherwise, litigation would be protracted and unnecessary delay and expense would result simply in order to have the board formally decide a fact which legally can be decided in only one way. Such an empty ritual has no place in a rational decision-making process."

Applying these principles to the instant case, it is clear that under the undisputed evidence the Board could have made only one finding of fact on the release question, namely, that the plaintiff executed a re-

lease of his claim. Therefore, we find and conclude as a fact that the plaintiff signed a release of his claim without reserving any rights in connection with the contract.

In further support of this finding, we point out that it is well settled that a litigant does not have to prove a fact admitted by the opposing party to be true. See 61 Am.Jur.2d, *Pleading* § 179 (1972), where it is stated:

"It is a general rule that a litigant is not required to prove the allegations or facts admitted by his adversary to be true, . . . ."

Also, see 29 Am.Jur.2d, *Evidence* § 615 (1967), where the rule is stated thus:

"Admissions made in the course of judicial proceedings are substitutes for, and dispense with, the actual proof of facts."

*See also Armstrong Paint & Varnish Works v. Nu-Enamel Corp.,* 305 U.S. 315, 322, 59 S.Ct. 191, 83 L.Ed. 195 (1938); *Cavender v. Cavender,* 114 U.S. 464, 471, 5 S.Ct. 955, 29 L.Ed. 212 (1885); *Alexander v. Harris,* 8 U.S., (4 Cranch) 299, 303, 2 L.Ed. 627 (1808); *Sadler Machinery Co. v. Ohio Nat.,* 202 F.2d 887, 890–891 (6 Cir., 1953). This rule is especially applicable to our case because the admissions of the plaintiff regarding the release were made both prior to its filing an appeal with the Board, as well as afterwards in the proceedings there and in the judicial proceedings here.

■ In view of these authorities, it is immaterial that the release signed by the plaintiff was not introduced into evidence before the Board and is not now before us as a part of the record on this appeal.[2]

Rule 1007 of the Federal Rules of Evidence supports this conclusion. It provides: "Rule 1007.

Testimony or Written Admission of Party

*Contents of writings,* recordings, or photographs *may be proved* by the testimony or deposition of the party against whom offered or *by his written admission, without accounting for the nonpro-*

*duction of the original."* (Emphasis supplied).

■ Since the record shows overwhelmingly that the plaintiff signed a release, its claims are barred. It is well settled that a contractor who executes a general release is thereafter barred from maintaining a suit for damages or for additional compensation under the contract based upon events that occurred prior to the execution of the release. *United States v. Wm. Cramp & Sons Co.,* 206 U.S. 118, 27 S.Ct. 676, 51 L.Ed. 983 (1907); *Urbanizadora Santa Clara, S.A. v. United States,* 518 F.2d 574, 207 Ct.Cl. 297 (1975); *Adler Constr. Co. v. United States,* 423 F.2d 1362, 191 Ct.Cl. 607 (1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971); *H.L.C. & Associates Constr. Co. v. United States,* 367 F.2d 586, 176 Ct.Cl. 285 (1966); and *J. G. Watts Constr. Co. v. United States,* 161 Ct.Cl. 801 (1963).

■ The plaintiff asked the Board to void the release it had signed on the ground that it was signed because of duress and coercion practiced on it by the representatives of the Government. The plaintiff alleged that the contracting officer and another government official threatened that no future contracts would be awarded to the plaintiff, and its good reputation with the Government would be ruined, if it did not install the sprinkler system and sign the release. The government officials denied these allegations by their affidavits filed with the Board. The Board held that the plaintiff's claim of duress was without merit. We agree. Plaintiff has neither alleged nor proven the necessary elements of duress as stated by this court in *Fruhauf Southwest Garment Co. v. United States,* 111 F.Supp. 945, 951, 126 Ct.Cl. 51, 62 (1953).

The plaintiff asserts an alternative breach of contract claim in its petition which is expressly excluded from its motion for summary judgment, because it says questions of fact are involved that will have to be proven at a trial. Neither party has

---

**2.** It is significant that the plaintiff never at any time denied signing the release—not even after the defendant alleged it as its second and third affirmative defense.

briefed nor argued this question. Consequently, we do not reach nor decide this issue.

Accordingly, the decision of the Board is affirmed and plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted and plaintiff's petition is dismissed, except for its breach of contract claim, which is remanded to the trial judge for further appropriate proceedings.