**BRUTOCO ENGINEERING & CONSTRUCTION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 675–85C.**

United States Claims Court.

March 31, 1987.

---

Paul M. Mahoney, Pomona, Cal., attorney of record, for plaintiff. Jones, Mahoney & Brayton, of counsel.

Linda T. Maramba, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, and Robert A. Reutershan, Asst. Director, of counsel.

## OPINION

NAPIER, Judge:

This case comes before the Court on defendant's motion and plaintiff's cross-motion for summary judgment. Both parties contend that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Jurisdiction is founded on the Contract Disputes Act of 1982, 41 U.S.C. § 609(a)(1) (1982).

The dispute in this case concerns the interpretation of inconsistent provisions in a contract regarding the proper method of payment for the resealing of existing joints in Portland cement concrete (PCC) pavement along hanger aprons at the Naval Air Station in Alameda, California. Plaintiff contends that the contract clearly provided that joint resealing was to be paid for on a unit price basis and therefore plaintiff did not include the cost of joint resealing in its lump sum bid price. Plaintiff also claims that it was not required to make a pre-bid inquiry and that any ambiguities in the contract must be construed against the defendant.

Defendant claims that the contract expressly required plaintiff to reseal all existing joints in the PCC pavement and that payment for this work would be made on a lump sum basis rather than a unit price basis. Further, defendant states that even if there was an ambiguity in the contract, plaintiff cannot prevail because it did not make a pre-bid inquiry as to the ambiguity and its interpretation of the contract provisions was not within the "zone of reasonableness."

Having reviewed the uncontroverted facts, the submissions of the parties, and the relevant case law, and after oral argument, the Court concludes that defendant's motion for summary judgment should be granted and that plaintiff's cross-motion for summary judgment should be denied.

### Facts

Plaintiff, Brutoco Engineering & Construction, Inc. (Brutoco), is a California corporation with its principal place of business located in Fontana, California. On January 24, 1983, Brutoco entered into Contract No. N62474–82–C–0244 with the United States Department of the Navy, Naval Facilities Engineering Command, for the repair of the aprons to hangers 39, 40, and 41 at the Naval Air Station, Alameda, California. More specifically, the contract called for, among other things, " * * * repair of existing concrete pavement with portland cement concrete and epoxy concrete, reseal-

ing existing joints and cracks, pavement striping and incidental related work."

The following contractual terms and conditions give rise to the dispute between the parties.

Section 00101, BIDDING INFORMATION, Paragraph 2, BIDS, states in pertinent part:

    (b) Under the bidding items furnished on SF 21, bid form, bidders shall state prices for each bid item given hereinafter.

    (i) Base Bid Item 1 shall be the entire work complete in accordance with the drawings and specifications and based on the following breakdown:

    (i)(a) Lump sum price for all work not covered in unit price items listed below: $_____

    (i)(b) Unit price per gallon of epoxy for repair of concrete pavement spalls.

    $_____ per gallon $\times$ 360 gallons = $_____

    (i)(c) Unit price per square foot for full depth Portland cement concrete repair of concrete pavement spalls.

    $_____ per SF $\times$ 770 SF = $_____

    (i)(d) Unit price per linear foot for sealing cracks.

    $_____ per LF $\times$ 14,500 LF = $_____

    TOTAL PRICE BID ITEM 1 $_____

The bid form (Standard Form 21) contained in the contract listed the same four items to be bid as were set forth in the bidding information in Section 00101. Further the bid form stated: "BIDS MUST BE SUBMITTED ON ALL ITEMS. FAILURE TO BID ON ALL ITEMS MAY RESULT IN THE BID BEING REJECTED AS NON–RESPONSIVE."

This bid form was used by contractors in bidding on the contract and plaintiff was awarded the contract based on its bid on the items contained in the form.

Standard Form 23, CONSTRUCTION CONTRACT, contained within the contract and signed by the parties stated:

The United States of America (hereinafter called the Government), represented by the Contracting Officer executing this contract, and the individual, partner-ship, joint venture, or corporation named above (hereinafter called the Contractor), mutually agree to perform this contract in strict accordance with the General Provisions, Labor Standards Provisions Applicable to Contracts in Excess of $2,000, and the following designated specifications, schedules, drawings, and conditions: in accordance with Base Bid Item 1: Sub-Item (i)(a) $1,330,000.00, Sub-Item (i)(b) $70.00 per gallon $\times$ 360 gallons = $25,200.00 Sub-Item (i)(c) $20.00 per SF $\times$ 770 SF = $15,400.00 Sub-Item (i)(d) $2.00 per LF $\times$ 14,500 LF =$29,000.00 Total Price Bid Item 1 $1,399,600.00 with Amendment No. 0001.

The Contractor shall furnish a performance bond in the sum of $1,399,600.00 and a payment bond in the sum of $559,-840.00.

Section 02616, RESEALING OF JOINTS AND CRACKS IN RIGID PAVEMENT, Paragraph 8, PREPARATION, states in pertinent part:

    8.1 General Joint Preparation: Unless otherwise indicated, saw, clean and reseal all joints.

Section 02616, Paragraph 12, MEASUREMENT FOR PAYMENT, states:

    12.1 Resealing Joint Measurement: The unit of measurement for resealing of joints will be the linear foot measured along the completed joint. The total number of feet resealed and accepted for payment will be determined by the Contracting Officer. No separate measurement will be made for removal, preparation, cleaning, refacing, deepening, backing-up material, or sweeping and removal of debris resulting from joint cleaning, or any other subsidiary obligations.

    12.2 Resealing Crack Measurement: The unit of measurement for repair and resealing of pavement cracks will be by linear foot measured along the completed repaired and resealed crack. The total number of repaired and resealed cracks accepted for payment will be determined by the Contracting Officer. No separate measurements will be made for removal of old seal, preparation, cleaning, routing-out, deepening, backing-up material

or sweeping and removal of debris resulting from crack cleaning or any other subsidiary obligation.

The contract also included several drawings. NAVFAC Drawing No. 6168385 (C–5), PAVEMENT REPAIR PLAN STA. 0 + 00 TO STA. 4 + 67 shows survey stationing and dimensions that relate to the size of the PCC paving slabs. GENERAL NOTES (PAVEMENT REPAIR), note No. 3 provides: "RESEAL ALL EXISTING JOINTS AND SEAL ALL EXISTING CRACKS INDICATED. FOR TYPICAL DETAILS SEE SHEET C–14."

NAVFAC Drawing No. 6168386 (C–6), PAVEMENT REPAIR PLAN STA. 4 + 67 TO STA. 9 + 39, and NAVFAC Drawing No. 6168387 (C–7), PAVEMENT REPAIR PLAN STA. 9 + 39 TO STA. 13 + 62, and NAVFAC Drawing No. 6168388 (C–8), PAVEMENT REPAIR PLAN STA. 13 + 62, TO STA. 18 + 22, all show survey stationing and dimensions that relate to the size of the (PCC) paving slabs and each shows a note no. 2 which provides: "FOR GENERAL NOTES AND LEGEND SEE SHEET C–5."

On September 1, 1983, Brutoco submitted a claim for payment to defendant for the resealing of the joints. Brutoco stated:

> Under Section 02616 of the Contract Specifications, paragraph 12.2, resealing of the cracks will be paid for by unit price. We believe there has been an oversight on the government's part, having not included an item for payment. There is no way of estimating in advance, repair of old joints which are determined by the contracting officer, and including this in the price of new concrete.
>
> We therefore request payment for 26,347 l.f. of repair @ $1.35/l.f. = $35,568.45.

Defendant's September 22, 1983, reply to Brutoco's claim stated:

> Your letter dated 01 September 1983 concerning a claim for payment for repair of old joints has been received. The government has not had the opportunity to formally review this matter at length and requests that your company submit a detailed breakdown of the work you believe is beyond your contractual requirements.

Brutoco, on December 6, 1983, provided the defendant with a cost breakdown for resealing joints as requested and stated:

> We feel the plans do not show where the joint repair is to be made and the specifications clearly states the item is to be paid by unit price and quantity to be determined by the contracting officer. We therefore feel we are entitled to full compensation for resealing the old joints.

Brutoco's last written claim to defendant was on July 9, 1984, wherein it requested the defendant to issue a change order designating an item for payment on the resealing of joints.

On November 16, 1984, the contracting officer issued his final decision, No. WD 57–84, denying Brutoco's claim for additional compensation. In denying Brutoco's claim, the contracting officer stated that specification section 02616, Paragraph 12.1, Resealing Joint Measurement, was included in the contract in error. However, the contracting officer further stated:

> You have chosen to interpret Specification Section 02616, Paragraphs 12.1 and 12.2 as creating unit price items for both, PCC joint resealing and PCC crack sealing, thereby causing a patent ambiguity to exist in that there is no provision elsewhere in the contract for unit price payment for joint sealing although the contract clearly requires resealing all existing joints. Upon discovering/creating a patent ambiguity, it was incumbent upon you to make an inquiry and there is no record of your firm making any inquiries.

Prior to submitting its bid for the contract, Brutoco did not discuss with or inquire of the Government whether joint resealing under the contract was to be bid or to be paid on a lump sum or unit price basis.

Brutoco's letters dated September 1, 1983, December 6, 1983, and July 6, 1984, and its complaint filed November 18, 1985, claim that it was entitled to additional com-

pensation in the amount of $35,568.45 for resealing existing joints in the PCC pavement. These letters and Brutoco's complaint state that the basis for their claim is: " * * * that the plans did not show where the joint repair was to be made; that there was no way of estimating in advance the quantity of joint repair needed; that the specification clearly states that the joint repair is to be paid by unit price; that there has been an oversight on the government's part by its failure to include a payment item for joint repair; that the letter dated March 18, 1983 from the Resident Officer in Charge of Construction provided for an approved schedule of prices which did not make allowance for resealing of joints; and that the CQC log of submittals shows resealing of cracks and joints as one item."

### Discussion

Defendant, in its motion, argues that Section 02616, Paragraph 8.1 and the contract drawings expressly state that all joints were to be resealed. Defendant further argues that the bidding information for the contract clearly indicates that joint resealing was not to be specially considered as an item excluded from the lump sum price for all work to be performed under the contract and not covered by the unit price items specifically listed.

The bidding information contained in Section 00101 states in Paragraph 2(b)(i)(d) that the contractor will be paid a "unit price per linear foot for sealing cracks." This paragraph correlates to Paragraph 12.2 of Section 02616, Resealing Crack Measurement. However, despite the inclusion of Paragraph 12.1 of Section 02616, Resealing Joint Measurement, neither the bidding information nor the bid form contains a corollary subparagraph listing joint resealing as an item to be bid and paid for on a unit price basis. Rather, Section 00101, Paragraph 2(a)(i)(a), clearly sets forth "that all work not covered in unit price items listed" should be included in the lump sum price for the required work and joint resealing unquestionably is not one of the unit price items listed.

Defendant argues that the contract is clear in meaning but states that to the extent the provisions create an ambiguity in the contract as to payment for joint resealing, Brutoco's interpretation cannot be adopted because it is not within the "zone of reasonableness." *Blount Bros. Constr. Co. v. United States,* 171 Ct.Cl. 478, 495, 346 F.2d 962, 972 (1965). Specifically, defendant states that the contract did not provide for inclusion of a unit price per foot for joint resealing and Brutoco did not submit this information in its bid. Further, defendant asserts that without this information, a unit price for joint resealing could not be calculated, and Section 02616, Paragraph 12.1, is meaningless.

In addition, defendant claims that where there are obvious omissions or ambiguities in the contract specifications or drawings, a contractor is required to make an inquiry regarding them before submitting its bid. *B.D. Click Co. v. United States,* 222 Ct.Cl. 290, 300, 614 F.2d 748, 753 (1980). Because Brutoco never made an inquiry regarding any patent ambiguities in the contract, defendant claims that Brutoco assumed the risk for any unanticipated costs incurred in this regard. *Dynamics Corp. of America v. United States,* 10 Cl.Ct. 275, 280 (1986).

The basis of Brutoco's claim is Section 02616, Paragraphs 12.1 and 12.2 which refer to the "Measurement for Payment" for joint resealing and crack resealing. These paragraphs provide that "the total number of feet resealed and accepted for payment will be determined by the Contracting Officer." Brutoco relies on the affidavit of Peter J. Nussbaum which states that any reasonable contractor reviewing the bidding information and specifications would conclude that Paragraphs 12.1 and 12.2 would be treated alike with respect to payment and would both be considered unit price items as opposed to lump sum items.

Brutoco, in opposition to defendant's motion and in support of its own motion for summary judgment, argues that "[w]here the government draws specifications which are fairly susceptible of a certain construction and the contractor actually and reasonably so construes them, justice and equity

require that the construction be adopted." *Peter Kiewit Sons' Co. v. United States,* 109 Ct.Cl. 390, 418 (1947). Brutoco claims that its interpretation of the contract was reasonable and that case law dictates that summary judgment be granted in its favor.

Further, Brutoco argues that the rule requiring a contractor to make a pre-bid inquiry is qualified by the holding in *WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 6, 323 F.2d 874, 877 (1963), in which the Court stated:

> Although the potential contractor may have some duty to inquire about a major patent discrepancy, or obvious omission, or a drastic conflict in provisions [citations omitted] he is not normally required (absent a clear warning in the contract) to seek clarification of any and all ambiguities, doubts, or possible differences in interpretation. The Government, as the author, has to shoulder the major task of seeing that within the zone of reasonableness the words of the agreement communicate the proper notions—as well as the main risk of a failure to carry that responsibility.

Relying on the affidavits discussed above, Brutoco claims that it could reasonably be expected to be reimbursed for joint resealing based on the total number of linear feet resealed and accepted for payment as determined by the contracting officer. The contracting officer determines the linear feet and payment accepted at the time the job is completed, not at the time the bid is submitted. Thus, Brutoco argues, there would be no reason to make a pre-bid inquiry.

It is well settled that the interpretation of the language of a contract is a question of law, not a question of fact. *Dynamics Corp. of America v. United States,* 182 Ct.Cl. 62, 71–72, 389 F.2d 424, 429 (1968). The Court's first responsibility in this case " * * * is to ascertain analytically whether *vel non* an ambiguity existed * * * " *Enrico Roman, Inc. v. United States,* 2 Cl.Ct. 104, 106 (1983) with regard to the method of payment for the resealing of joints.

The rule of *contra proferentem* resolves any such ambiguities " * * * by construing offending terms in a contract against the drafter of the language * * *." *Sperry Corp. v. United States,* 9 Cl.Ct. 488, 494 (1986). However, this rule is subject to the Court's holding in *Wickham Contracting Co., Inc. v. United States,* 212 Cl.Ct. 318, 323, 546 F.2d 395, 398 (1976), where it was stated:

> Under circumstances where a patent and glaring discrepancy exists in a contract * * * and such a discrepancy would be recognized by a reasonable bidder, there is a burden imposed on such a bidder to seek clarification of said discrepancy from an appropriate government official before submitting a bid, if the bidder, subsequent to an award to it, hopes to rely on its unilateral resolution of the discrepancy issue as a basis for a subsequent contract price adjustment claim. [Citations omitted.] This proposition is for application in situations where a bidder knew, as well as in situations where a bidder should have known, of the discrepancy. * * * [Citation omitted.] Indeed it has been said that whether a bidder knew or did not know of the discrepancy prior to submitting its bid is not a governing factor. "It is the existence and type of the discrepancy, not necessarily the contractor's actual knowledge of it that imposes a burden of inquiry on the contractor * * *." *HRH Constr. Corp. v. United States,* 192 Ct.Cl. 912, 920–21, 428 F.2d 1267, 1272 (1970).

In the instant case, if the contract is read as a whole " * * * so as not to leave one or more terms meaningless or useless * * * " *Sperry Corp. v. United States,* 9 Cl.Ct. at 494, it is clear that the intent of the government was to pay for joint resealing on a lump sum price. The bid form contained all the items of work comprising the bid. Of the four items contained in the bid form, three were to be paid for on a unit price basis. None of these included joint resealing. The remaining item of the bid form included all the other work to be performed under the contract and this work was specifically to be paid on a lump sum basis.

The inclusion of Paragraph 12.1 of Section 02616, dealing with the measurement for payment of joint resealing is so inconsistent with the method of payment contemplated for joint resealing in the bidding information and the bid form itself that it created an ambiguity in the contract. This ambiguity should be patent to a knowledgeable and experienced contractor such as Brutoco thereby requiring it to make an inquiry before submitting its bid. As Brutoco stated in response to defendant's interrogatories, it did not discuss with or inquire of defendant whether joint resealing under the contract was to be bid or to be paid on a lump sum or unit price basis. Therefore, by " * * * failing to respond to this obligation and going ahead with its bid preparation, plaintiff voluntarily assumed all risks of an incorrect interpretation." *B.D. Click Co., Inc.*, 222 Ct.Cl. at 300, 614 F.2d at 753.

Assuming *arguendo* that the inclusion of Paragraph 12.1 did not create a patent ambiguity placing a duty on Brutoco to inquire, then the Court must determine whether or not Brutoco's interpretation of the contract falls within the "zone of reasonableness." *Blount Bros. Constr. Co.*, 171 Ct.Cl. at 495, 346 F.2d at 972. As was stated above, the rule that a non-patent ambiguity must be resolved against the drafter " * * * is subject to the condition that the alternative interpretation tendered by the other party be a reasonable one." *William F. Klingensmith, Inc. v. United States*, 205 Ct.Cl. 651, 657, 505 F.2d 1257, 1261 (1974) (*Per Curiam*). This, too, is a question of law for the Court to decide. *John C. Grimberg Co., Inc. v. United States*, 7 Cl.Ct. 452, 456 (1985). In cases such as this, the Court " * * * must place itself in the shoes of a reasonable contractor in considering the contract language." *Id.* at 456.

The Court is of the view that Brutoco's interpretation of the contract, and Paragraph 12.1 in particular, was not reasonable. Brutoco's interpretation that it was entitled to payment for joint resealing on a unit price basis is primarily dependent on Paragraph 12.1. That provision merely provides a method for computing payment if joint resealing is to be bid on a unit price basis. Brutoco's interpretation ignores the fact that *all* items to be bid on a unit price basis were listed not only in the bidding information but also on the bid form contained in the contract and which Brutoco used to compute its bid. Again, there were only three items to be bid on as unit price basis and joint resealing was clearly not among them. Further, Brutoco's bid did not mention joint resealing. In view of the above factors, the Court concludes that it was unreasonable for Brutoco to expect that it would be compensated for joint resealing on a unit price basis.

### Conclusion

Based on the foregoing discussion, defendant's motion for summary judgment is granted, and plaintiff's motion is denied. The Clerk of the Court shall dismiss the complaint. No costs.

IT IS SO ORDERED.