918 F.2d 187
 37 Cont.Cas.Fed. (CCH) 76,027
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SINCLAIR OIL CORPORATION, Appellant,
v.
The UNITED STATES, Appellee.
 Nos. 90-1171, 90-1281.
 United States Court of Appeals, Federal Circuit.
 Oct. 24, 1990.
 
 Before ARCHER, PLAGER and CLEVENGER, Circuit Judges.
 DECISION
 CLEVENGER, Circuit Judge.
 
 
 1
 Sinclair Oil Corporation (Sinclair) appeals the decision of the Department of Energy Board of Contract Appeals (the Board) denying Sinclair's claim that the U.S. Department of Energy (the Government) overcharged it for the purchase of crude oil from the Naval Petroleum Reserve under Contract Nos. DE-SC01-88FE61502 and DE-SC01-88FE61555. We affirm.
 
 OPINION
 
 2
 Pursuant to two contracts, Sinclair purchased certain quantities of crude oil from the Government. Both contracts specified that Sinclair would pay a crude base price for the oil determined by averaging the three highest posted prices per barrel of all the prices posted or published for crude oil of like quality and API gravity in the contract-referenced fields.
 
 
 3
 The Government computed the crude base price by averaging the three highest prices of all the prices posted or published by companies for the referenced oil fields. The three prices used were posted by ARCO Oil and Gas Company (ARCO), Border Fuel Supply Corporation (Border) and Permian Operating Limited Partnership (Permian).
 
 
 4
 Sinclair claimed that Border and Permian's posted prices were wrongfully used in computing the crude base price, and as a result it was overcharged for the oil.
 
 
 5
 The contracts clearly stated that the average of the three highest prices of all the prices posted or published would be used to compute the crude base price. Therefore, the Board heard extrinsic evidence only to determine whether the term "posted prices" had acquired a special meaning in the industry, as contended by Sinclair.
 
 
 6
 Sinclair offered the affidavits of Mr. Fink and Mr. Cox in support of its contention that by industry custom the term "posted prices" in the contracts was limited to posted prices that constituted bona fide offers to purchase. Neither affiant was offered as an expert in the area of crude postings.
 
 
 7
 The Board noted that Mr. Cox was not clear as to what language constitutes an offer to purchase. Neither Mr. Cox nor Mr. Fink referenced or produced any evidence showing that companies whose postings were "offers to purchase" always made purchases only at their posted prices, as contended by Sinclair.
 
 
 8
 Mr. Fink testified that by industry custom a posted price was understood to be a price "for which purchasers are willing to pay, and which such purchasers do in fact pay, for the actual sale of crude oil." Mr. Fink provided no instances or examples where his definition of posted prices was applied in the industry. Furthermore, the Board found that Mr. Fink's testimony was not supported by other evidence in the record, including both the testimony of Mr. Cox and the testimony of representatives of companies that actually post prices in the relevant fields.
 
 
 9
 Representatives from the three companies whose postings were actually used (ARCO, Border and Permian) testified that their postings do not always represent the price at which an actual purchase will be made but are used, for example, as benchmarks from which contract prices are negotiated.
 
 
 10
 In an apparent effort to counter the testimony given by representatives of the posting companies, Sinclair cited the definition of "posted prices" first promulgated by the Cost of Living Council (CLC) in 1973. The Board correctly noted that the CLC definition is no longer present in the DOE regulations. The Board further stated that no evidence related the CLC definition of posted prices to current contract practices.
 
 
 11
 Based on the foregoing determinations, the Board found that Sinclair had failed to meet its burden of proving that, at the time the parties contracted, a "posted price" was understood in the industry to mean a bona fide offer to purchase. Therefore, the Board construed the contract according to the plain meaning of its terms and denied Sinclair's claims.
 
 
 12
 We may not set aside the Board's decision on any question of fact unless it "is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. Sec. 609(b) (1988). Based on the record before us, we conclude that the Board's factual findings cannot be challenged on any of those grounds.
 
 
 13
 The Board's interpretation of the contracts, including the meaning of the term "posted prices," is a legal conclusion that does not bind this Court. See 41 U.S.C. Sec. 609(b) (1988); B.D. Click Co. v. United States, 614 F.2d 748, 752-53 (Ct.Cl.1980). "However, a Board's interpretation of a contract will be given careful consideration and accorded great respect." Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed.Cir.1985). After carefully considering the submitted record as well as the arguments presented by both parties, we conclude, as did the Board, that Sinclair failed to meet its burden of proving a different or special meaning of the term "posted prices" in the industry during the relevant time period. Therefore, we conclude that the Board correctly construed the contract according to its plain language.
 
 
 14
 Accordingly, the decision of the Board is affirmed.