**Edward R. MADIGAN, Secretary of Agriculture, Appellant,**

v.

**HOBIN LUMBER COMPANY, Appellee.**

No. 92–1056.

United States Court of Appeals, Federal Circuit.

Feb. 25, 1993.

Rehearing Denied; Suggestion for Rehearing In Banc Declined April 22, 1993.

Kirk T. Manhardt, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Kenneth Capps, Office of General Counsel, Dept. of Agriculture, Washington, DC, of counsel.

Jan D. Sokol, Stafford, Frey, Cooper & Stewart, Portland, OR, argued, for appellee. With him on the brief was Christopher A. Rycewicz.

Before MAYER, MICHEL, and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Edward R. Madigan, Secretary of Agriculture (hereinafter "the government"), appeals from a decision of the United States Department of Agriculture, Board of Contract Appeals (Board), which granted summary judgment in favor of Hobin Lumber Company (Hobin) and denied the government's motion for summary judgment. *Hobin Lumber Co.*, AGBCA No. 87–170–1, 91–3 BCA ¶ 24,213 1991 WL 149914 (1991). The Board held that the government was not entitled to recover on the contract because it had not suffered any damage as a result of Hobin's failure to cut the timber as required by the contract. Because the contract specifically provides that the government is entitled to recover in the event that the contractor does not cut the timber and the government does not resell it, and also provides the method by which the amount of recovery is to be determined, we reverse the Board's decision and direct it to grant summary judgment for the government and award damages in the amount $5,170,-707.24.

## BACKGROUND

On August 19, 1980, the Forest Service and Hobin Lumber Company (Hobin) entered into a contract for the sale of timber on a certain plot of land, Sudan 016. Hobin failed to cut the timber as required by the contract before its expiration.

The government asserted a claim to recover damages because of Hobin's failure to cut the timber. The government based its right on the following provision of the contract:

B9.4 FAILURE TO CUT. In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which Current Contract Value plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. *If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.*

(Emphasis added.)

When, after the period of contract performance, the government chose not to resell the timber, but to preserve the trees as habitat for the northern spotted owl, the government based its damage calculation on the "no-resale" clause of section B9.4. Relying on the Forest Service's appraisal of timber at the time the contract expired, the government asserted the amount due it

was $5,170,707.24 in damages.[1] The contracting officer determined that Hobin was liable for that amount in his final decision.

Hobin appealed that decision to the Board. Before the Board, both the Forest Service and Hobin moved for summary judgment. Hobin did not dispute that it failed to cut the timber as required by the contract or that under section B9.4 the government would be entitled to $5,170,-707.24 in damages. Rather, Hobin argued that because the Forest Service chose not to resell the timber, the Forest Service suffered no damages, and thus, as a matter of law, was not entitled to recover under *Louisiana–Pacific Corp. v. United States*, 227 Ct.Cl. 756 (1981). Hobin additionally argued that: (1) section B9.4 imposes an impermissible penalty and is therefore void as against public policy, (2) the government's failure to mitigate its damages precludes any recovery, and (3) Hobin's nonperformance was excused by the doctrine of impossibility of performance.

Believing itself bound by *Louisiana–Pacific*, the Board granted Hobin's motion for summary judgment and denied the Forest Service's motion. The Board concluded that "the Government cannot recover monetary damages for the uncut timber," 91–3 BCA at 121,117, because:

> [I]n those circumstances where the Government has determined that the sale area is, for environmental reasons or pursuant to some congressional enactment, more valuable for other purposes than for timber sales, under the *Louisiana–Pacific* decision, there appears to be no damage for which monetary compensation would be available for the volume of uncut timber. The [Forest Service] has not suffered any damage resulting from such uncut timber.

*Id.*

Although the Board granted summary judgment in favor of Hobin, the Board rejected Hobin's impermissible penalty and mitigation arguments because the contractual method of stipulating and calculating damages agreed to by the parties, section

B9.4, had "been found acceptable by this Board and the U.S. Court of Claims." *Id.* at 121, 116 (citing *Young Wholesale Lumber & Supply, Inc.*, AGBCA No. 86–311–1, 89–3 BCA ¶ 22,184, 1988 WL 74048 (1988), and cases cited therein, and *Forest Envtl. Serv. Co. v. United States*, 5 Cl.Ct. 774 (1984)). The Board also rejected Hobin's claim of impossibility of performance because "there is no indication that the [Forest Service] ever attempted to stop [Hobin] from operating the sale." *Id.*

The government appealed to this court. We have jurisdiction pursuant to 28 U.S.C. §§ 1295(a)10. The Contract Disputes Act defines the standard against which we must review decisions of agency boards of contract appeals:

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b) (1988).

## ANALYSIS

■ A long line of our precedent has established that agreed-upon contract terms must be enforced. *See, e.g., Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1564–65 (Fed.Cir.1990) (enforcing contractual waiver of both Article III and Seventh Amendment rights over contractor's objection); *Do–Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 640–41 (Fed.Cir.1989) (enforcing contractual agreement of a limitations period for presenting a termination claim, over contractor's objection), *cert. denied,* — U.S. —, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991); *McCall v. United States Postal Serv.*, 839 F.2d 664, 667 (Fed.Cir.1988) (enforcing contractual waiver of right to appeal because "choice was knowing and voluntary"); *Broome Constr., Inc. v. United States*, 492

---

1. The contract price was $7,382,451.24, and the appraised value of the timber was $2,211,744.00. The government asserted entitlement to the difference, $5,170,707.24.

F.2d 829, 834, 203 Ct.Cl. 521 (1974) (stating that "[t]he court must enforce a mutually agreed-upon contract according to its terms"); *Aragona Constr. Co. v. United States*, 165 Ct.Cl. 382, 390 (1964) (enforcing contractual provision requiring the contractor to comply with change orders of the contracting officer). These cases represent the general rule of contract law that contracting parties must be held to their agreements.

In 1981, the United States Court of Claims issued an order that purportedly carved out an exception to that general rule. *Louisiana–Pacific*, 227 Ct.Cl. 756. *Louisiana–Pacific*, like the instant case, involved a timber sale contract with the government; the contract required that the contractor cut 7,075 MBF (Thousand Board Feet) of timber within a certain period of time. Before the time for performance had expired, the government decided that it did not want to sell 5,705 MBF of that timber. Accordingly, it proposed that the contract be modified such that 5,705 MBF of timber would be excluded from the contract and the contractor would be given a one-year extension of the time for performance. The contractor refused to enter the modification.

Upon expiration of the contract term, the contractor brought suit alleging that the government breached the contract. The government counterclaimed "for damages for plaintiff's failure to cut, during the contract term, all the logs allegedly required by the contract to be logged." *Id.* at 757. Both parties filed motions for summary judgment. Upon consideration thereof by the U.S. Court of Claims, the court concluded that "neither party is entitled to summary judgment at this stage," and that "the whole case should be remanded to the Trial Division for further development, analysis, and consideration of various factual questions." *Id.* However, the court stated:

> The one issue we do decide at this time relates to the amount of uncut timber for

which the defendant should be permitted to claim damages *(if it turns out to be entitled to recover at all)* on its counterclaim for plaintiff's failure to cut the entire contract amount.

*Id.* at 758 (emphasis added). With respect to that issue, the court concluded that "recovery on the counterclaim *(if allowable at all)* cannot exceed damages for failure to cut 1,370 MBF." *Id.* (emphasis added). The court based its conclusion on two facts:

> [F]irst, that if plaintiff had agreed to defendant's offer (on conditions rejected by plaintiff) to extend the contract term for one-year only, plaintiff would have been allowed to log only an additional 1,370 MBF, and, second that defendant did not sell and had no intention of selling any of the remaining 5,705 MBF either to plaintiff or to anyone else.

*Id.*.

*Louisiana–Pacific* represents an exception to the general rule that agreed-upon contract terms must be enforced because, by limiting the government's recovery, the court failed to give effect to a term in the parties' contract. The contract in *Louisiana–Pacific* included a damage provision which was virtually identical to the one involved in this case [2] and which included a similar "no-resale" clause. Thus, the parties there agreed that if the government did not resell the timber after the contractor failed to cut it, the agreed method would determine the government's damages. With respect to that clause, the court stated:

> Clause C9.2 of the contract, on which defendant relies, should not be read to call for recovery of damages from plaintiff for uncut timber which the Government has no intention of selling but wishes to preserve indefinitely. In that situation the Government would not be injured or damaged by the non-cutting, and does not deserve any monetary compensation for the failure to cut.

*Id.*

Thus, the Court of Claims did not allow the government to recover damages as the

---

**2.** The court's order in *Louisiana–Pacific* does not set forth the exact language of the clause; however, the parties to this suit agree that the

clause in *Louisiana–Pacific* was virtually identical to section B9.4 in this case.

contract provided, but instead limited the government's right of recovery. The court did not provide any supporting analysis or cite any statutory authority or case precedent for carving out this exception to the general rule that agreed-upon contract terms must be enforced. The only support the court provided for its conclusion were the facts that the government attempted to modify the contract but the contractor refused and that the government had no intention to resell the timber. Because the "no-resale" clause as we construe it allows the government not to resell the timber and explicitly sets forth how damages are to be calculated when it does not resell, the critical fact in *Louisiana–Pacific* must have been the government's attempted modification of the contract during the period of contract performance and the contractor's refusal. That being the only evident, and plausible,[3] justification for creating an exception to the general rule that agreed-upon contract terms must be enforced, the exception created by *Louisiana–Pacific* must be narrowly construed to apply only in those cases where similar facts occurred. That is, *Louisiana–Pacific* should only apply in those cases where the government decides during the period of contract performance that it does not want all of the contract timber cut, where the government attempts to modify the contract during the period of contract performance to limit the timber the contractor is otherwise required to cut but the contractor refuses, and where the government subsequently seeks to recover damages on that precise timber.

The question then becomes whether in this case the Board was correct in concluding that it was bound by *Louisiana–Pacific*. We conclude that it was not. The case is factually distinguishable. As noted above, the government's attempted modification of the contract in *Louisiana–Pacific* was critical to the court's limitation of the government's right to recovery and to the creation of an exception to the general rule that agreed-upon contract terms must be enforced. In this case, the government did not attempt to modify the contract or to prevent Hobin in any way from performing its obligation under the contract. Nor was there any congressional enactment or other government ban on logging in the contract area during the period of contract performance that would have prevented Hobin from performing its obligations under the contract. Thus, no similar "estoppel" theory can be applied in this case, and *Louisiana–Pacific* is not controlling. The agreed-upon contract term, *i.e.*, that the government is entitled to recover damages in the event there is no resale for whatever reason, including that it chooses not to resell the timber, must be given effect.

■ Hobin's other arguments, that (1) section B9.4 imposes an impermissible penalty and is therefore void as against public policy, (2) the government's failure to mitigate its damages precludes any recovery, and (3) Hobin's performance was excused by the doctrine of impossibility of performance, are also not persuasive. The Board properly disposed of those arguments, 91–3 BCA at 121,116, and we need not repeat the analysis here.

We do note that with respect to mitigation, the contractor argued that the Forest Service's failure to try to resell precluded its recovery. Given the language of the "no-resale" clause—"If there is no resale"—we do not agree. That language is not limited to when the Forest Service cannot resell, so it must comprehend both when the Forest Service cannot resell and when it chooses not to. Even if mitigation is normally required, the parties in this case effectively agreed, by incorporating the "no-resale" clause in the contract, that the government did not have a duty to try to resell.

Accordingly, we conclude that the agreed-upon contract term, providing that the government is entitled to damages and providing the method of calculating those damages in the event that the government does not resell the timber, must be en-

---

**3.** The government's attempted modification of the contract during the period of contract performance is a plausible justification for creating an exception to the general rule because it suggests that the court applied some form of estoppel against the government.

forced in this case in accordance with the general principles of contract law and established precedent.[4] The "no-resale" contract provision does not in any way limit the government's right to recover when it later chooses not to resell the timber for environmental or any other reason.

## CONCLUSION

According to section B9.4 of the contract, the government is entitled to $5,170,707.24 in damages. The Board erred in granting Hobin's motion for summary judgment and in denying the government's motion for summary judgment. Accordingly, the decision is reversed and the Board is directed to enter summary judgment in favor of the government for $5,170,707.24.

REVERSED.

---

**4.** Hobin's argument regarding whether the government suffered damages as a result of Hobin's failure to cut the timber is misdirected. The agreed-upon contract term, entitling the government to compensation, controls. In any event, the appraised value of the timber at the time the contract performance period ended, $2,211,744.00, indicates that the government has indeed suffered damages as a result of Hobin's breach. Because the contract price was $7,382,- 451.24, the government suffered $5,170,707.24 worth of damage. The latter amount represents the benefit of the government's bargain, of which the government has been deprived as a result of Hobin's breach. Any subsequent decision made by the government as to what to do with the timber land cannot negate the fact that Hobin's breach deprived the government of the benefit of its bargain.