### HOSKINS LUMBER CO., INC., Plaintiff/Cross–Appellant,

v.

### The UNITED STATES, Defendant–Appellant.

### Nos. 92–5091, 92–5108.

United States Court of Appeals, Federal Circuit.

March 28, 1994.

---

Kirk T. Manhardt, U.S. Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Stuart E. Schiffer, David M. Cohen, John W. Showalter, Frank W. Hunger and Lisa B. Donis. Of counsel was Lori D. Polin, Dept. of Agriculture.

Michael E. Haglund, Haglund & Kirtley, Portland, OR, argued for plaintiff/cross-appellant.

Before NEWMAN, and RADER, Circuit Judges, and GARBIS, District Judge.*

DECISION

RADER, Circuit Judge.

Hoskins Lumber Co., Inc. (Hoskins) and the United States Forest Service (Forest Service) cross appeal from the United States Court of Federal Claims' decision that Hoskins defaulted on its timber contract. *Hoskins Lumber Co. v. United States,* 24 Cl.Ct. 259 (1991). This court *affirms* the decision of the Court of Federal Claims on default. Following the default, the Forest Service dedicated the area covered by the contract as protected habitat for the Northern Spotted Owl. Because the Government did not resell this timber, the trial court declined to award damages to the Government for Hoskins' default. *Hoskins Lumber Co. v. United States,* No. 323–88 C (Fed.Cl. Jan. 31, 1992). Be-

* Honorable Marvin J. Garbis, United States District Court for the District of Maryland, sitting by designation.

cause the contract expressly contained a method of damages calculation if the timber was not resold, this court *reverses* and *remands* to the Court of Federal Claims for a determination of the damages under the contract.

## BACKGROUND

On October 13, 1978, Hoskins entered into the Griffith Middlefork 78 Timber Sale, Contract No. 062778. By contract terms, Hoskins agreed to cut, remove, and pay for timber from the Alsen Ranger District of the Siuslaw National Forest. The parties later agreed to extend the contract completion date to December 31, 1984.

In the late 1970s and early 1980s, the timber market collapsed. In response to tumbling timber market prices, the Forest Service authorized the Multi–Sale Extension Program (Program). Under the Program, timber contract holders could extend their contract termination dates by up to five years. The Final Notice of the Program, published in the Federal Register, gave February 15, 1984 as the deadline for contractors to file under the Program. Extension of Certain Timber Sale Contracts, 48 Fed.Reg. 54,812 (1983) (to be codified at 36 C.F.R. § 223).

In April 1983, several contractors, including Hoskins, filed a class action suit requesting relief from timber contracts on the basis of impracticability. On February 15, 1984, the district court issued an injunction preventing the Government:

(1) from enforcing in any manner the contracts at issue in this action ...; (2) from enforcing the current February 15, 1984 deadline ...; and (3) [granting] the members of plaintiffs' class 30 days following the dissolution of the preliminary injunction to submit and have considered by the [Government] a five-year plan

. . . . .

*North Side Lumber Co. v. Block,* Civ. No. 83–490–BU (D.Or.1984).

On February 16, 1984, Hoskins asked the Regional Forester if he interpreted the *North Side* injunction as allowing Hoskins thirty days beyond dissolution of the injunc-

tion to file under the Program. The Regional Forester responded affirmatively. On March 21, 1984, the Contracting Officer (CO) notified Hoskins that its contract was subject to the *North Side* injunction. On October 29, 1984, the CO notified Hoskins that its contract would "conditionally" extend until thirty days after dissolution of the injunction.

On February 20, 1985, the Court of Appeals for the Ninth Circuit ruled that the *North Side* district court lacked subject matter jurisdiction over this contract claim. *North Side Lumber Co. v. Block,* 753 F.2d 1482 (9th Cir.) *cert. denied,* 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985). The Government offered a settlement by which contractors could file under the Program in exchange for dismissal with prejudice. A letter from the Forest Service stated that:

The Forest Service contends that it does not have to accept MSEP's [Multi–Sale Extension Plans] from class members, except from those who choose to accept and sign the settlement agreement.

Hoskins elected not to take the settlement.

On March 28, 1986, the CO notified Hoskins that it was in default. The Forest Service rejected as untimely Hoskins' filing under the Program. Hoskins filed after February 15, 1984 deadline, but within thirty days of dissolution of the invalid injunction.

Hoskins sought relief in the Court of Federal Claims. Both parties moved for summary judgment. The trial court granted the summary judgment motion of the Forest Service "as to liability," but awarded no damages. *Hoskins Lumber,* 24 Cl.Ct. at 268. Later the Court of Federal Claims dismissed the Forest Service's counterclaim for damages. *Hoskins Lumber Co. v. United States,* No. 323–88 C (Fed.Cl. Jan. 31, 1992). Both parties appealed.

## DISCUSSION

This court reviews judgments of the Court of Federal Claims for clear errors in factual determinations and errors in legal determinations. *Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir.1992). Neither party disputes the trial court's factu-

al determinations in this case. This court reviews the trial court's determinations of law, including contract interpretation, *de novo.* *B.D. Click Co. v. United States,* 614 F.2d 748, 752, 222 Ct.Cl. 290 (1980).

### Timeliness

■ The *North Side* injunction granted the members of the class thirty days after the dissolution of the injunction to file under the Program. Hoskins' case before the Court of Federal Claims sought to enforce deadlines in the injunction. Hoskins requested the trial court to honor the invalid injunction's thirty-day grace period for filing under the Program. The Court of Federal Claims determined:

> Giving effect to an order issued by a court without jurisdiction violates basic principles of judicial power.... Dissolution of the *North Side* injunction meant that the Forest Service could enforce the contract without showing contempt for the court order, and enforce the February 15, 1984 deadline as well.

*Hoskins Lumber,* 24 Cl.Ct. at 263 (citations omitted). This court detects no error in this determination.

The Supreme Court's holding in *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), does not support Hoskins' reliance on the terms of an injunction issued without jurisdiction. In *United Mine Workers,* the Court affirmed a trial court's inherent power to enforce its injunctions. When the union in that case engaged in enjoined conduct, the district court held it in criminal contempt. Although later rulings invalidated the injunction, the union had nonetheless violated a court order. Therefore, the Court upheld the charge of criminal contempt. *Id.* at 303, 67 S.Ct. at 701; *see also Hampton Tree Farms, Inc. v. Yeutter,* 956 F.2d 869 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 56, 121 L.Ed.2d 25 (1992). The Supreme Court clarified that only criminal, not civil, contempt proceedings would survive invalidation of an injunction for jurisdictional reasons. *United Mine Workers,* 330 U.S. at 295, 67 S.Ct. at 697; *see also Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336 (3d Cir.1976).

*United Mine Workers* does not support Hoskins' attempt to give effect to the terms of an invalid injunction. Rather *United Mine Workers* clarifies the effect of a criminal contempt charge based on violation of an invalid injunction. The Court of Federal Claims correctly determined that *United Mine Workers* does not require enforcement of the invalid injunction in this case.

■ The letter from the CO "conditionally" extending Hoskins' opportunity to enter the Program did not modify the contract between the parties to grant Hoskins the time extension ordered by the invalid injunction. At the time the CO sent the letter in October 1984, the injunction was in effect. The letter merely acknowledged the CO's obligation to comply with the terms of the injunction as long as it was in effect. Once the injunction was dissolved, the CO's provisional measures indicating a willingness to comply with court orders did not bind the Forest Service to comply with the terms of an invalid injunction. A letter written months before invalidation of the injunction could not revive its terms. Indeed, in this case, the CO had no authority to extend the deadline for filing. *See* 36 C.F.R. § 223.115 (1993).

Hoskins knew or should have known that it could not rely on an injunction on appeal. Hoskins could have taken advantage of the settlement or protectively filed within the original deadline. For all these reasons, this court affirms the holding of the Court of Federal Claims regarding Hoskins' default.

### Damages

■ The Court of Federal Claims dismissed the Forest Service's counterclaim for damages. However, section B9.4 of Hoskins' contract states:

> Failure to Cut. In event of ... Purchaser's failure to cut designated timber on portions of Sale Area by Termination date, Forest Service shall appraise remaining Included Timber....
>
> ... If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the

difference between Current Contract Value and Effective Purchaser Credit.

Thus, the parties expressly agreed to a measure of damages in the event of no resale. In this case, no resale occurred. Therefore, the parties' agreement governs the measure of damages. The Court of Federal Claims erred in dismissing the counterclaim.

In the interim between the decision of the Court of Federal Claims and the instant appeal, this court decided *Madigan v. Hobin Lumber Co.*, 986 F.2d 1401 (Fed.Cir.1993), a case legally indistinguishable from this appeal. In *Hobin*, this court required compliance with the express measure of damages envisioned by the contract in the event of no resale:

> [W]e conclude that the agreed-upon contract term, providing that the government is entitled to damages and providing the method of calculating those damages in the event that the government does not resell the timber, must be enforced in this case in accordance with general principles of contract law and established precedent.

*Id.* at 1405–06. In addition to the terms of the contract, this prior ruling of this court requires enforcement of section B9.4 of Hoskins' contract.

The trial court erred by relying on *Louisiana–Pacific Corp. v. United States*, 227 Ct. Cl. 756, 1981 WL 21434 (1981). Under the "special circumstances" of that case, the United States Court of Claims awarded no damages for a contractor's default on a timber contract:

> [The contract] should not be read to call for recovery of damages from plaintiff for uncut timber which the Government has no intention of selling but wishes to preserve indefinitely. In that situation the Government would not be injured or damaged by the non-cutting, and does not deserve any monetary compensation for the failure to cut.

*Id.* at 758.

In *Hobin*, this court also clarified that *Louisiana–Pacific* does not apply here:

> *Louisiana–Pacific* should only apply in those cases where the government decides during the period of contract performance that it does not want all of the contract timber cut, where the government attempts to modify the contract during the period of contract performance to limit the timber the contractor is otherwise required to cut but the contractor refuses, and where the government subsequently seeks to recover damages on that precise timber.

*Id.* at 1405. This court further stated, "no similar 'estoppel' theory can be applied in this case, and *Louisiana–Pacific* is not controlling." *Id.* Rather the language of the contract governs.

Accordingly, this court remands the issue of damages to the Court of Federal Claims for application of the contract section setting forth a measure of damages in the event of no resale.

## CONCLUSION

This court affirms the trial court's grant of summary judgment in favor of the Government on the question of Hoskins' default. However, this court holds that the Government is entitled to damages under the formula in the contract. Therefore, this court reverses and remands for a determination of the Government's damages.

## COSTS

Each party to bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent from this court's holding that the Forest Service was not bound by its promise. Hoskins Lumber Co. relied not only on the injunction issued by a United States district court, but also on the written and repeated assurances of the Forest Service that Hoskins could file its Multi–Sale Extension Plan ("MSEP") within thirty days of the dissolution of the injunction. Hoskins did so. It is not reasonable or fair now to hold that Hoskins had to file its MSEP as if the injunction had never been issued, indeed as if the promise of the Forest

Service, on which Hoskins and the Forest Service both relied, was never made.

## I

### Contract Modification

#### A

Faced with a deadline of February 15, 1984 by which to file an application to participate in the Multi–Sale Extension Program, Hoskins and others had filed a class action seeking delay and other relief. On February 15, 1984 the United States District Court for the District of Oregon issued a preliminary injunction (hereinafter "the North Side Injunction") that stated, in part:

> it is ORDERED that defendants ... are enjoined (1) from enforcing in any manner the contracts at issue in this action held by the conditionally certified class members; (2) from enforcing the current February 15, 1984 deadline for the submission of a multi-sale extension plan by any of the conditionally certified class members that could include one or more of those timber sales in such a plan; and (3) to grant the members of the plaintiffs' class *30 days following the dissolution of the preliminary injunction* to submit and have considered by the Forest Service a five-year plan which could include one or more of the enumerated sales. This Order does not provide for any adjustment of contract dates.

*North Side Lumber Co. v. Block*, No. 83–490–BU (D.Ore. Feb. 15, 1984) (emphasis added).

The North Side Injunction was dissolved on November 29, 1985 by the United States Court of Appeals for the Ninth Circuit, which court held that jurisdiction over the entire cause of action was in the Court of Federal Claims, and that the district court had been without jurisdiction to issue the injunction. *North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir.), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985).

Hoskins filed its MSEP on December 27, 1985, within thirty days following the dissolution of the injunction by the Ninth Circuit. The Forest Service rejected this filing for being filed after the original February 15, 1984 deadline, and has never acted on Hoskins' MSEP. Instead the Forest Service notified Hoskins on March 28, 1986 that Hoskins was in default because it did not complete its timber operations by December 29, 1985. The extension of time to file the MSEP was totally disavowed, in curious contrast to the Forest Service's selection of this same extension date as the date for completion of timber operations.

Although the ruling of the Ninth Circuit did not eliminate the possibility of relief for those who relied on the North Side Injunction, it is not necessary to rely on the injunction, for the Forest Service and Hoskins had modified their contract during that period. Hoskins' filing of its MSEP was in accordance with that contract modification.

#### B

The Forest Service and Hoskins had entered into a contractual modification following the North Side Injunction, adjusting the contract dates accordingly.

The Deputy Chief of the Forest Service had sent Hoskins a Memorandum dated March 12, 1984, affirming the advice given by the Regional Forester to Hoskins on February 16, 1984, that Hoskins would have thirty days after the dissolution of the injunction to file its MSEP. The March 12 Memorandum stated "if actions by the District Court of Oregon or the Ninth Circuit Court of Appeals further affect the Multi–Sale Extension Program, we shall provide additional direction." In an abundance of caution, Hoskins again asked the Forest Service for assurance that it would have thirty days following the dissolution of the injunction in which to file its MSEP for the Griffith Middlefork 78 contract. This assurance was provided by letter dated April 2, 1984, wherein the Regional Forester replied:

> You do not need to file a Multi–Sale Extension Plan until the 30–day period following dissolution of the North Side injunction.

In addition, a contract modification was entered into on April 10, 1984. The modification provided that because Hoskins intended to file a MSEP, Hoskins' obligation to pay

certain cash extension and interest payments would be terminated. The modification extended the original contract termination date of February 15, 1984, pending completion of application and approval of the MSEP:

> Pursuant to B8.3 and based upon Purchaser's intent to submit a Multi–Sale Extension Plan in accordance with the Multi–Sale Extension Program, it is agreed that the effective date of the extension of this contract is February 15, 1984, and that pending completion of Purchaser's application and the Forest Service approval of the Purchaser's Plan, additional obligation for payment under C4.252 # are terminated effective February 15, 1984.

> \*   \*   \*   \*   \*   \*

> In the event Purchaser fails to pay the billing when due, execute the extension, or the requested extension is denied, this modification will have no force or effect on this contract with respect to the tolling of the payment due dates, and all amounts accruing during the interim are immediately due.

The contract modification was duly executed, and the billing of accumulated interest in accordance therewith was paid by Hoskins to the Forest Service. The contract modification stated that it was "based upon" Hoskins' "intent to submit a Multi–Sale Extension Plan in accordance with the Multi–Sale Extension Program."

All of this occurred while the Forest Service was challenging the validity of the North Side Injunction in the Ninth Circuit, yet the contract extension and other promises were not conditioned on the outcome of the appeal. Even if the Forest Service believed that the injunction was invalid, it did not make its commitments dependent on, or defeasible by, the decision of the Ninth Circuit.

These written reassurances and contractual undertakings by the Forest Service were straightforward and businesslike. They were made with the intention and expectation that they would be relied upon by the contracting parties. As they were, by both sides. On October 29, 1984, the Contracting Officer wrote Hoskins specifically that the Griffith contract was conditionally extended until thirty days after the dissolution of the February 15, 1984 injunction. The Contracting Officer prohibited all cutting and removal of timber during this period:

> The February 1, 1985, amended complaint in North Side Lumber Company, et al. v. John Block et al. (Civil No. 83–490–BU), includes the following timber sales you have purchased which have a termination date of December 31, 1984. These sales are hereby conditionally extended from their current termination dates until 30 days after the February 15 injunction is dissolved. No felling or removal of timber is permitted when a contract is under conditional extension.

Thus the Forest Service declared no default at the time that the February 15, 1984 date was not met, for everyone concerned relied on the injunction and the integrity of the ensuing promises. Indeed, I can not comprehend the action of the Forest Service in now holding Hoskins in default because Hoskins did *not* complete cutting during this period of conditional extension. To do so would have violated the explicit terms of the conditional extension. There is a mystical quality to the Forest Service's actions, whereby all cutting was forbidden, followed by a holding of default for failure to cut.

In sum, there were mutual promises, restraints, reliance, and detriment—all in writing and all undisputed. Written assurances were issued on behalf of the United States by the Regional Forester, the Contracting Officer, and the Deputy Chief of the Forest Service. No one's authority to issue such assurances has been challenged. The Forest Service did more than postpone the deadline for filing the MSEP: the Forest Service expressly extended the contract, under explicit conditions and prohibitions during the extension. None of these commitments was made dependent on the ultimate validity of the injunction, although the Forest Service was pursuing that issue in the courts.

It is unseemly for the United States to disown these commitments, placing Hoskins in retroactive violation without even the thirty days to file its MSEP as was promised by not only the district court, but in so many communications and commitments from au-

thorized federal officials. Yet on March 28, 1986 the Forest Service held that Hoskins' MSEP was untimely, although it was filed twenty-eight days after dissolution of the injunction, and that the Griffith sale was in default because logging had not been completed during the period of the conditional extension during which logging was prohibited. These tactics do no credit to the government, and should not be endorsed by this court.

### C

The government argues, and the panel majority accepts, that 36 C.F.R. § 223.115 precluded the Contracting Officer from extending the deadline beyond the original date of February 15, 1984, and thus that the extension was retroactively void. Section 223.115 provided:

> The term of any contract or permit shall not be extended unless the approving officer finds:
>
> (a) That the purchaser has diligently performed in accordance with contract provisions and an approved plan of operation; or
>
> (b) That the substantial overriding public interest justifies the extension.

36 C.F.R. § 223.115.

The government argues that part (a) had not been met since Hoskins had not "performed" the contract. Hoskins had, however, performed until the enactment of the Multi-Sale Extension Program affected all such contracts, as was its purpose. The government also argues that the finding of an "overriding public interest" in part (b) must be set forth formally. However, the government does not dispute the overriding public intent of the President's program, which authorized the Secretary to grant extensions as set forth in 16 U.S.C. § 472a(c) and 36 C.F.R. § 223.115. The statutory provision that implemented the Multi-Sale Extension Program (called "the President's program of July 28, 1983") states, in relevant part:

> Timber contracts bid prior to January 1, 1982, not bought out pursuant to subsection (a) and included in the President's program of July 28, 1983, shall not be subject to any further extension of time for performance *except as permitted under the President's program of July 28, 1983,* as implemented by the Secretary of Agriculture and the Secretary of the Interior, providing for the extension of certain timber sale contracts and requiring the phased harvesting of such extended contracts, which program is hereby ratified except as modified by paragraph (2).

16 U.S.C. § 618(b)(1) (emphasis added). The Secretary was obliged to comply with this statute; 36 C.F.R. § 223.115 did not overrule this enactment. Indeed, the purpose of the extension granted to Hoskins by the Forest Service was to avoid default and permit participation in the President's program, which itself was instituted to relieve hardship. The legislative history of 16 U.S.C. § 618(b) makes this purpose explicitly clear, referring to the 5-year extensions available under that program:

> Contracts extended under the President's program and not bought out should be completed in accordance with that program and not be further extended at the conclusion of their 5-year extensions.
>
> Interim extensions permitted under the President's program in advance of a 5-year extension, such as so-called Soft II and conditional extensions, still are permitted....

S.Rep. No. 596, 98th Cong., 2d Sess. 13 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3796, 3806.

Although the Court of Federal Claims apparently accepted the government's legal theory that the Forest Service was not estopped from now refusing to comply with its agreement with Hoskins, the legal issue is not estoppel. The parties entered into contractual arrangements, executed by personnel having authority to bind each side. Indeed, the government states that those members of the *North Side* class who entered into settlements with the government were granted the benefit of these contractual extensions. The government's obligation to respect its contractual obligations should not depend on whether a person in the private sector stands up to bureaucratic excess.

## II

### *The Default Judgment*

When the Forest Service decided that Hoskins was retroactively too late in filing the MSEP, Hoskins was also held in default for failure to cut and pay for the timber in the Griffith Middlefork 78 contract. The government demanded as damages the amount of $234,374.32, measured as the difference between the contract price and the appraised value at the contract termination date.

The Court of Federal Claims accepted that Hoskins was in default, but remitted the damages. The court observed that the timber could no longer be cut, for its preservation was ordered by the government in order to preserve the habitat of the Northern Spotted Owl, a decision made "on or about December 9, 1987", according to the government's brief. The court concluded that the application of section B9.4 (assessing damages) was inappropriate in this circumstance and that the decision of the Court of Claims in *Louisiana–Pacific Corp. v. United States,* 227 Ct.Cl. 756, 1981 WL 21434 (1981), controlled the outcome. The Court of Federal Claims stated:

> We hold only that defendant's decision to preserve the timber for environmental purposes renders the application of section B9.4 inappropriate under the special circumstances of this case. The use of section B9.4 and similar clauses is widespread, and we assume that they will continue to be a part of many government contracts. The parties agreed to this measure at the outset, and parties to a contract should normally abide by the terms of their agreement.

In addition to the considerations outlined above, we find that *Louisiana–Pacific Corp. v. United States,* 227 Ct.Cl. 756, 1981 WL 21434 (1981) controls this case. In *Louisiana–Pacific,* the Court of Claims ruled that the Government should not receive damages for failure to cut timber which it had no intention of selling.

The court viewed *Louisiana–Pacific* as binding precedent. Indeed it is, until or unless it is overruled *en banc.*[1] Although the panel majority relies on *Madigan v. Hobin Lumber Co.,* 986 F.2d 1401 (Fed.Cir.1993), that decision did not overrule *Louisiana–Pacific.* Thus even if Hoskins were in default, this court, like the Court of Federal Claims, is bound by *Louisiana–Pacific.*

Further, *Hobin* is readily distinguishable, for the Forest Service in that case was not encumbered by its express promise concerning the MSEP. Unlike Hobin, Hoskins was entitled to consideration of its plan that would have extended its time to harvest the timber until after the environmental ruling prohibited such harvest.

The *Hobin* court distinguished *Louisiana–Pacific* on the ground that *Louisiana–Pacific* was based upon an estoppel arising out of the government's attempt to modify the contract. The court noted the absence of any contractual impediment or congressional enactment pertinent to the government's dealings with Hobin:

> As noted above, the government's attempted modification of the contract in *Louisiana–Pacific* was critical to the court's limitation of the government's right to recovery and to the creation of an exception to the general rule that agreed-upon contract terms must be enforced. In this case, the government did not attempt to modify the contract or to prevent Hobin in any way from performing its obligation under the contract. Nor was there any congressional enactment or other government ban on logging in the contract area during the period of contract performance that would have prevented Hobin from performing its obligations under the contract.

*Hobin,* 986 F.2d at 1405. In Hoskins' case the Forest Service prohibited performance of the contract during the conditional extension, which did not end until thirty days following the dissolution of the injunction. The regulations make clear that the filing of a MSEP was intended to prevent default during the processing of the Plan. *See* 48 F.Reg. 38,-862, 54,812 (1983). Hoskins' MSEP applica-

---

1. *South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982) *(en banc)* (adopting precedent of the Court of Claims and the Court of Customs and Patent Appeals).

tion was timely by both the contract modification and the Order of injunction, and was in accordance with the President's program.

When the government ruled that the "highest and best use" of the Griffith Middlefork timber was not to harvest it, the Court of Federal Claims correctly held that this "special circumstance" overrode the routine application of the B9.4 damages clause. As in *Louisiana–Pacific*, there was no damage to the government by the non-cutting:

> [The contract] should not be read to call for recovery of damages from plaintiff for uncut timber which the Government has no intention of selling but wishes to preserve indefinitely. In that situation the Government would not be injured or damaged by the non-cutting, and does not deserve any monetary compensation for the failure to cut.

*Louisiana–Pacific*, 227 Ct.Cl. at 758. Even on the government's theory that the original contract had never been extended, *Louisiana–Pacific* authorizes and requires relief when the government has not been damaged by the non-cutting. I do not share the view that the government is entitled to damages from Hoskins based on a valuation that is contrary to fact, and in the absence of injury to the government.

Even on the government's theory that it was Hoskins, not the government, who was in breach, the Court of Federal Claims correctly held that damages were not incurred since there was no injury. It is irrational to require that although the nation now benefits from the non-harvesting of the timber, Hoskins must pay damages as if the timber had been harvested during the period when harvesting was enjoined. On the panel majority's ruling the government obtains double recovery: both the dollar value of the timber as if it had been illegally cut, and the habitat value of the uncut timber. I respectfully dissent from this unwarranted and unfair ruling.

### Conclusion

The Forest Service had the authority to extend its contract with Hoskins, and it did so. Hoskins' MSEP was filed in accordance with the extension, and was timely. The government breached its obligation to permit this filing. On this ground alone, Hoskins should prevail. Alternatively, *Louisiana–Pacific* requires affirmance of the judgment of the Court of Federal Claims.