ROSBORO LUMBER COMPANY,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–592C.

United States Court of Federal Claims.

May 6, 1999.

Laurence E. Thorp, Springfield, Oregon, attorney of record, for plaintiff. Thorp, Purdy, Jewett, Urness & Wilkinson, PC, of counsel.

Gerald M. Alexander, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director, of counsel.

## OPINION

FUTEY, Judge.

This contract case is before the court on plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment.[1] The parties dispute the scope of plaintiff's entitlement to damages flowing from defendant's termination of a contract with plaintiff for the sale of timber. Plaintiff argues that the terms of the contract control the computation of damages. Defendant maintains that plaintiff was awarded the subject contract merely because a district court ordered it to do so. The district court's order, however, was reversed on appeal; and, therefore, defendant terminated the contract. According to defendant, plaintiff should not be entitled to rely on the erroneous district court ruling in establishing an entitlement to damages.

### Factual Background

In 1992, the Forest Service, United States Department of Agriculture (defendant) advertised the Allen Timber Sale in the Wallowa–Whitman National Forest in Oregon. Through this contract, defendant sought to sell to a purchaser all timber specified in the contract. In addition, the contract provided that it would be the responsibility of the purchaser to cut and remove the referenced timber.

---

1. Plaintiff moves for summary judgment as to liability only.

Prior to award of the contract, however, defendant implemented a new policy to preserve areas of old growth forest. Pursuant to this new policy, defendant decided not to award the contract on the Allen Timber Sale.

As part of the 1995 Supplemental Appropriations for Disaster Assistance and Recissions Act (Act), Pub.L. No. 104–19, 2001(k), 109 Stat. 194, 240–47, Congress stated, with regard to timber sales:

Notwithstanding any other provision of law, within 45 days after the date of the enactment of this Act, the Secretary concerned shall act to award, release, and permit to be completed in fiscal years 1995 and 1996, with no change in originally advertised terms, volumes, and bid prices, all timber sale contracts offered or awarded before that date in any unit of the National Forest System or district of the Bureau of Land Management subject to section 318 of Public Law 101–121 (103 Stat. 745)....

109 Stat. at 246.

Defendant interpreted the Act as only requiring it to award the contract to the highest bidder. At the time, however, the original highest bidder had become ineligible for award, and thus, defendant determined it need not award the contract to anyone other than the highest bidder. Consequently, defendant did not award the contract.

The United States District Court for the District of Oregon disagreed with defendant's interpretation of the Act. *See Northwest Forest Resource Council v. Glickman,* No. 95–6244, slip op. at 20 (D.Or. Jan. 10, 1996).[2] Accordingly, the district court ordered defendant to award the contract to another qualified bidder. *Id.*

In compliance with the district court's order, the contracting officer (CO) contacted plaintiff with regard to plaintiff's interest in proceeding with contract award. The letter from the CO to plaintiff, dated January 25, 1996, states in pertinent part:

Please be advised that issues affecting this sale are still in litigation.

. . . .

The highest ranked bidder ... who meets the criteria of a responsible purchaser and who has declared a desire to be awarded the sale under the original terms, conditions, and high bid rate, will be entitled to awarded [sic] of this contract under the Court's January 10, 1996 order.[3]

On March 11, 1996, defendant awarded the contract to plaintiff. Further, in a letter from the CO to plaintiff, dated the same day the contract was awarded, the CO stated the district court's ruling was currently being appealed, and if overturned, "th[e] award, and any contract executed as a result of th[e] award, is null and void."[4]

The contract the parties entered into provides, in pertinent part:

C8.2–TERMINATION. ($^{12}$⁄$_{89}$) The Chief, Forest Service, by written notice, may terminate this contract, in whole or in part, (1) to comply with a court order, regardless of whether this sale is named in such an order, upon determination that the order would be applicable to the conditions existing on this sale; or (2) upon a determination that the continuation of all or part of this contract would:

(a) Cause serious environmental degradation or resource damage[;] (b) Be significantly inconsistent with land management plans adopted or revised in accordance with Section 6 of the Forest and Rangeland Renewable Resources Planning Act of 1974, as amended[;] (c) Cause serious damage to cultural resources ... [; and] (d) Jeopardize the continued existence of Federally listed threatened and endangered species or, cause unacceptable adverse impacts on sensitive species, identified by the appropriate Regional Forester.

---

2. In *Northwest Forest Resource Council v. Glickman,* No. 95–6244, (D.Or. Jan. 10, 1996), suit was brought by a nonprofit corporation representing the forest products industry of Oregon and Washington. In that case, the plaintiff sought an order compelling the award and release of 23 timber sale contracts, including the Allen Timber Sale. In order to avoid confusion,

the court will only refer to that action as it relates to the instant contract.

3. Joint Stipulation of Material Facts, filed April 8, 1998 (Joint Stip.), Appendix (App.) at 175.

4. *Id.* at 177.

Compensation for termination under this provision shall be calculated pursuant to C9.5, except; compensation for termination under (1) shall be calculated pursuant to C9.51 when included in this contract and compensation for termination under (2)(d) shall be calculated pursuant to C9.52 when included in this contract.[5]

Neither Clause C9.51 nor Clause C9.52 were included in the contract. The contract, however, included Clause C9.5, which provides, with regard to termination:

SETTLEMENT. ($^{10}/_{77}$) If this contract is terminated by [defendant] under C8.2, Purchaser agrees that the liability of the United States shall be limited to the sum of (1) the value of unused Purchaser Credit; (2) the estimated expenditures for felling, bucking, lopping, skidding, and decking any products so processed, but not removed from Sale Area because of the termination action; (3) out-of-pocket expenses involved in acquiring and holding the contract such as maintaining performance bonds and cash deposits, and (4) the difference between (a) Current Contract Rates for the remaining uncut volume, and (b) the rates paid for comparable timber on the same National Forest during the preceeding [sic] 6-month period multiplied times [sic] the remaining uncut volume.[6]

On June 14, 1996, the United States Court of Appeals for the Ninth Circuit disagreed with the district court and held that defendant was not required to offer the sale to other qualified bidders. *See Northwest Forest Resource Council v. Pilchuck Audubon Soc'y*, 97 F.3d 1161, 1167 (9th Cir.1996). Based upon the decision of the Ninth Circuit, on August 2, 1996, defendant informed plaintiff that it considered the contract on the Allen Timber Sale null and void. In compliance .with defendant's position, plaintiff ceased performance on the contract.

On September 19, 1996, plaintiff remitted to defendant a letter which outlined its position with regard to defendant's termination of the contract:

Based on part C9.5 of the contract, [plaintiff] hereby makes demand for payment of $104,275.95 for its out-of-pocket expenses involved in acquiring and holding the contract and for payment of $458,551.00 representing the difference between contract rates and bid rates paid for comparable timber on the Wallowa–Whitman National Forest during the six [-] month period preceeding [sic] contract termination.[7]

In response, on November 14, 1996, defendant informed plaintiff:

The Government is willing to reimburse expenses on an equitable basis.... Once you provide further documentation, the Government would be willing to reimburse the following items:

[(1)] Expenses incurred in February 1996 associated with assessing current sale conditions[; (2)]

Operating expenses incurred between April 1996 and July 1996[; (3)] Out-of-pocket road construction costs[; (4)] Downpayment [sic] deposit (this is in the process of being refunded; you should receive this by December 3, 1996)[; (5)] Interest on the downpayment [sic] at the rate of 7%'for the period of March 14, 1996 through December 3, 1996 (or when you receive your downpayment [sic] deposit refund)[; and (6)] Expense of holding the performance bond for the period of March 11, 1996 through October 7, 1996.[8]

Defendant made no reference to plaintiff's claim for damages under Clause C9.5 of the contract.

Before the expiration of one year after submitting its claim to the CO, plaintiff filed suit in this court on August 28, 1997, seeking damages based upon the terminated contract. According to plaintiff, utilizing the damages calculation provided in Clause C9.5 of the contract, it is entitled to $1,964,514.[9] In the

---

5. *Id.* at 122.

6. *Id.* at 133.

7. *Id.* at 181.

8. *Id.* at 185. In addition, defendant informed plaintiff it would return its performance bond, and its down-payment deposit of $62,000.

9. Plaintiff does not explain why the amount it seeks here differs from the amount claimed before the contracting officer.

alternative, plaintiff argued that, should the court find the contract null and void, plaintiff is entitled to the same amount in *quantum meruit.* On April 30, 1998, plaintiff filed its motion for partial summary judgment, further expounding on these two theories of relief. Defendant filed its cross-motion for summary judgment on September 2, 1998, asserting that it, as the prevailing party on appeal, may not be penalized by the terms of the trial court's erroneous ruling and must receive the benefit of its vindication on appeal. According to defendant, plaintiff is not entitled to damages computed under the contract.

### Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS,* 998 F.2d 979 (Fed.Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir. 1987)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). It therefore does not follow that if one motion is rejected, the other is necessarily supported. *Id.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* (citing *Corman,* 26 Cl.Ct. at 1014).

■ Plaintiff brings this action pursuant to the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1994). The CDA applies to any express or implied contract entered into by an executive branch agency for the procurement of goods, services or disposal of personal property. 41 U.S.C. § 602(a). "A timber sale contract is a contract for the disposal of personal property within the meaning of the CDA." *Reservation Ranch v. United States,* 39 Fed.Cl. 696, 708 (1997). Therefore, this action is properly before the court.

■ Defendant does not dispute the parties entered into a valid enforceable contract, nor that it terminated the contract.[10] Rather, defendant contends the terms of the contract should not control the computation of plaintiffs damages. In this regard, defendant asserts plaintiff should not be permitted to benefit from, or rely upon, the district court's invalid and erroneous decision. Thus, the only issue before the court is the method of computing the quantum of damages to which plaintiff is entitled.

Pursuant to Clause C8.2 of the contract, defendant may terminate the contract under specifically enumerated circumstances. These circumstances include, among others, a determination that performance would: (1) result in serious environmental degradation or resource damage; or (2) be significantly inconsistent with adopted or revised land management plans.[11]

The parties have stipulated that defendant adopted "a new policy to preserve areas of old growth forest."[12] Although this policy was adopted after the contract was offered for award, and prior to the initial contract award, the parties have not asserted defendant changed this policy. Therefore, the court is satisfied defendant terminated the contract in accordance with Clause C8.2.

■ Because defendant terminated the contract pursuant to Clause C8.2, the contract further provides Clause C9.5 is to be utilized in determining the scope of plaintiff's damages. "It is well settled that a party to a contract will be bound by the terms ... unless the contract is found to be unreasonable ... or it produces an egregious, unfair

---

10. Joint Stip., at ¶¶ 9, 13–14.

11. App. at 122.

12. Joint Stip., at ¶ 2.

or unreasonable result." *Forest Environmental Servs. Co. v. United States American Employers Insurance Co.*, 5 Cl.Ct. 774, 777 (1984). Plaintiff should be entitled to damages computed under the terms agreed to by the parties. *See Reservation Ranch*, 39 Fed. Cl. at 721 (timber contract included termination and settlement clauses; plaintiff was entitled to damages computation specified in the contract); *see also Wetsel–Oviatt Lumber Co. v. United States*, 38 Fed.Cl. 563, 570 (1997) ("[t]he scope of liability and quantum of damages is limited by clauses C8.2 [and] C9.5, . . . as those clauses are applicable to the [subject] contract[ ]").

Indeed, *Allen M. Campbell Co. v. United States*, 199 Ct.Cl. 515, 467 F.2d 931 (1972), which neither party bothered to cite, is both instructive and dispositive. In *Campbell*, this court's predecessor, the United States Court of Claims found, in facts similar to the instant case, the Government is liable for the damages enumerated in the contract, irrespective of the erroneous district court decision. *Id.* at 934. The court reasoned the sole inquiry is whether the CO was authorized, under the circumstances, to award the contract to the plaintiff. *Id.* at 933. Here, no dispute exists as to the authority of the CO to bind the Government in the instant contract.

Nevertheless, defendant posits that, because it ultimately prevailed on appeal, Clause C9.5 should not be utilized in computing plaintiff's damages. Defendant asserts it should be the beneficiary of that appeal and cites to *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), and *Hoskins Lumber Co. v. United States*, 20 F.3d 1144 (Fed.Cir.1994), among others, in support of its position.

In *United Mine Workers*, the United States Supreme Court upheld a trial court's criminal contempt power in enforcing its own injunction, even when the injunction may be later invalidated on appeal. *United Mine Workers*, 330 U.S. at 294, 67 S.Ct. 677. The Court observed:

It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order.

*Id.* at 294–95, 67 S.Ct. 677. The Court reasoned that civil contempt charges would not survive a subsequent finding that the trial court lacked jurisdiction to initially order the injunction. *Id.* at 295, 67 S.Ct. 677.

In the case at bar, neither criminal nor civil contempt charges are implicated. Moreover, the Ninth Circuit did not rule the district court lacked subject matter jurisdiction to order injunctive relief. Therefore, defendant's reliance upon *United Mine Workers* is misplaced.

Defendant's reliance upon *Hoskins* is equally unavailing. *Hoskins* involved a contractor's attempt to rely upon a district court injunction as a basis for relief in the United States Court of Federal Claims when the district court's ruling was later overturned for lack of subject matter jurisdiction by the Ninth Circuit. *Hoskins*, 20 F.3d at 1146. The United States Court of Appeals for the Federal Circuit held the Court of Federal Claims was not required to enforce an invalid injunction. *Id.* at 1147.

As previously stated above, however, the Ninth Circuit in the present case did not determine the district court lacked subject matter jurisdiction to consider the action. Rather, that court held the district court erred in its interpretation of the Act, and found defendant retained "discretion in deciding whether to make awards to entities other than the high bidders." *Northwest*, 97 F.3d at 1167. Significantly, the Ninth Circuit did not order defendant to terminate the subject contract. Stated differently, notwithstanding the decision rendered by the Ninth Circuit, defendant *could have* required plaintiff to continue with contract performance.

Because defendant retained discretion to either terminate the contract or require plaintiff to complete performance, the court will enforce the contract as written. *See Solar Turbines, Inc. v. United States*, 23 Cl.Ct. 142, 157 (1991) (" '[w]ere courts free to refuse to enforce contracts as written on the basis of their own conceptions of the public

good, the parties to contracts would be left to guess at the content of their bargains, and the stability of commercial relationships would be jeopardized'") (quoting *St. Paul Mercury Ins. Co. v. Duke Univ.*, 849 F.2d 133, 135 (4th Cir.1988)). To find otherwise, would render defendant's promise illusory. *See Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756, 760 (1982).[13] Therefore, the court concludes plaintiff is entitled to damages as determined by Clause C9.5 of the contract. *See Hoskins*, 20 F.3d at 1148 ("the parties' agreement governs the measure of damages").

### Conclusion

For the above-stated reasons, the court grants plaintiff's partial motion for summary judgment as to liability and denies defendant's cross-motion for summary judgment.[14] Accordingly, the court finds plaintiff is entitled to damages specified under the contract. The parties are directed to file a joint status report by June 7, 1999, indicating further pre-trial proceedings in this case.

---

13. Defendant appears to suggest that, because plaintiff was aware that the district court action was being appealed, and defendant would consider the contract null and void should it ultimately prevail on appeal, plaintiff should not be able to enforce the contract as it was written. To the extent defendant argues its pre-award warnings became a binding term of the contract, the argument is without merit. The 1995 Supplemental Appropriations for Disaster and Recissions Act, Pub.L. No. 104–19, 2001(k), 109 Stat. 194, 246 specifically states that all timber sale contracts offered for sale must be awarded "*in originally advertised terms, volumes, and bid prices.*" *Id.* (emphasis added). Therefore, defendant's warnings did not become a term of the contract.

14. Defendant also argues that plaintiff's *quantum meruit* claim is beyond the court's jurisdiction. The United States Court of Appeals for the Federal Circuit recently stated:

> *Quantum meruit* is the name given to an implied-in-law remedy for unjust enrichment. As a general rule, it falls outside the scope of relief available through the Court of Federal Claims.

*AT & T Co. v. United States*, 124 F.3d 1471, 1479 (Fed.Cir.1997). The Federal Circuit, however, has vacated that decision and has decided to hear the case *en banc*. *AT & T Co. v. United States*, 136 F.3d 793 (Fed.Cir.1998). Because no dispute exists as to the validity of the contract, the court considers plaintiff's *quantum meruit* claim moot.